In re:

Gerald Trooien,                                              Case No. BKY 10-37695

                Debtor.                                    Chapter 11 Case

---

## DEBTOR'S PLAN OF LIQUIDATION
## DATED MARCH 21, 2011

---

Debtor Gerald Trooien (the "Debtor" or "Trooien") proposes the following Plan of Liquidation ("Plan") under Chapter 11 of the Bankruptcy Code.

## ARTICLE I

### Definitions

Capitalized terms used in this Plan have the following meanings. The Bankruptcy Code also defines many terms; those definitions are incorporated by reference.

"<u>Abandoned Ownership Interests</u>" has the meaning set forth in Article V(h).

"<u>Allowed</u>" means with respect to any claim, (a) a claim that has been scheduled by the Debtor in its Schedules as other than disputed, contingent or unliquidated and as to which the Debtor or any other party-in-interest has not filed an objection; (b) a claim that either is not a contested claim or has been allowed by a Final Order; (c) a claim that is determined by the Debtor to be allowed; (d) a claim that is allowed in a stipulation or settlement executed prior to or after the Effective Date; (e) a claim relating to a rejected executory contract or unexpired lease that is not a contested claim or has been allowed by a Final Order, only if a proof of claim has been timely filed; or (f) a claim as to which a proof of claim has been timely filed and as to which the Debtor or any party-in-interest has not filed an objection; and with respect to all claims, only after reduction for applicable setoff and similar rights of the Debtor.

"<u>Avoidance Claim</u>" means any claim of the Debtor or the bankruptcy estate pursuant to Sections 544, 545, 547, 548, 549, 550 or 551 of the Bankruptcy Code.

"<u>Bankruptcy Code</u>" or "<u>Code</u>" means Title 11 of the United States Code.

"<u>Bankruptcy Rule</u>" or "<u>Rule</u>" means a Federal Rule of Bankruptcy Procedure.

"Cabin Property" means 22759 E. Lake Hubert Dr., Lake Edward Twp., MN, Crow Wing County legally described as:

That part of Government Lot 1, Section 30, Township 135, Range 28 West, Crow Wing County, Minnesota, described as follows:

Commencing at the Northeast corner of said Section 30; thence North 88 degrees 49 minutes 30 seconds West, assumed bearing, along the North line of said Section 30 for a distance of 1040.00 feet; thence South 21 degrees 28 minutes 30 seconds West 763.45 feet to the point of beginning of the tract to be herein described; thence South 37 degrees 37 minutes 10 seconds West along the Westerly right of way line of East Lake Hubert Drive 175.47 feet; thence North 52 degrees 23 minutes 00 seconds West 175 feet, more or less, to the shoreline of LAKE HUBERT; thence Northeasterly along said shoreline to the intersection with a line bearing North 60 degrees 27 minutes 00 seconds West from the point of beginning; thence South 60 degrees 27 minutes 00 seconds East 191 feet, more or less, to the point of beginning.

"Causes of Action" means any and all actions, proceedings, causes of action (including, without limitation, any causes of action of a debtor or debtor in possession under chapter 5 of the Bankruptcy Code such as the Avoidance Claims), liabilities, obligations, suits, reckonings, covenants, contracts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, rights to object to claims, variances, trespasses, damages, judgments, executions, claims and demands whatsoever, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured or whether asserted or assertable directly or derivatively, in law, equity or otherwise, and all rights thereunder or attendant thereto.

"Committee" means the official committee of the unsecured creditors in this Bankruptcy Case.

"Confirmation Date" means the date on which the Confirmation Order is entered.

"Confirmation Order" means the order confirming this Plan.

"Court" means a United States Bankruptcy Judge for the District of Minnesota, or any other court having competent jurisdiction to issue an order in this case.

"Debtor" means Gerald Trooien.

"Disclosure Statement" means the Disclosure Statement In Support of Debtor's Plan of Liquidation dated March 21, 2011 as modified or amended.

"Effective Date" means the 15th day following the day on which the Confirmation Order becomes a Final Order and the conditions of Article XII have been satisfied.

"Entities" means, for purposes of this Plan, any corporation, partnership, limited liability company or similar organization reorganized as a legal person which is owned in whole or in part by Debtor, including but not limited to those listed on Attachment B-13/14 to Schedule B of the Schedules.

"Estate Assets" means all the right, title, and interest in and to property of whatever type or nature owned by the Debtor which is and remains property of the estate for purposes of Sections 541 and 1115 of the Bankruptcy Code, including Avoidance Claims and Causes of Action.

"Exempt Property" has the meaning set forth in Article V(d)(1) of the Plan.

"Filing Date" means October 25, 2010.

"Final Order" means an order of the Court which has not been reversed, stayed, modified, or amended and the time to appeal from such order has expired. The plan proponent may elect to waive provisions relating to appeal and treat any order of this Court as a Final Order and may distribute and otherwise proceed under this Plan, even if there is a pending motion to extend time for appeal or a pending appeal, unless the order is stayed.

"GE" has the meaning set forth in Article IV, Class 1-D.

"Homestead Property" means 965 Summit Avenue, St. Paul, MN legally described as:

The East 1/2 of the West 1/2 of Lot 17, and the East 1/2 of Lot 17, and all of Lots 18 and 19, Block 28, Summit Park Addition to St. Paul, Ramsey County, Minnesota

or if the real property is sold, the proceeds of such sale.

"Liquidating Agent" means the individual selected by the Committee, with the consent of the Debtor, prior to the Confirmation Date, and approved by the Court to undertake and perform the rights, powers, duties and responsibilities of the Liquidating Agent set out in this plan.

"Oversight Committee" means the committee of three persons that, prior to the Effective Date, will be comprised of the Liquidating Agent and two unsecured creditors approved by the Court.

"Plan" means this Debtor's Plan of Liquidation as amended or modified.

"Post-Confirmation Estate" means the continuation after the confirmation of this Plan of the bankruptcy estate created under the Bankruptcy Code at the filing of this chapter 11 case.

"Record Date" means the last date on which a claim transfer will be recognized. The Record Date is the Confirmation Date.

"Schedules" means the schedules of Assets and liabilities of Debtor and the Statement of Affairs on file with the Clerk of the United States Bankruptcy Court for the District of Minnesota, as amended or modified in accordance with Bankruptcy Rule 1009.

## ARTICLE II

### Classification of Claims and Interests

The following table designates the classes of claims against and equity interests in the Debtor and specifies which of those classes are (i) impaired or unimpaired by the Plan and (ii) entitled to vote to accept or reject the Plan in accordance with Section 1126 of the Bankruptcy Code.

| Class | Designation | Impaired | Entitled to Vote |
|-------|-------------|----------|------------------|
| N/A | Administrative Expenses | N/A | No |
| N/A | Priority Claims | N/A | No |
| 1-A | Secured Claim – First Horizon Home Loans | No | No |
| 1-B | Secured Claim – Banc of America Leasing and Capital | N/A | No |
| 1-C | Secured Claim – Associated Bank, N.A. | N/A | No |
| 1-D | Secured Claim – GECPAC Investment II, Inc. and General Electric Capital Corp. | N/A | No |
| 1-E | Secured Claim – Ford Motor Credit | No | No |
| 1-F | Secured Claim – Bank of America | No | No |
| 1-G | Secured Claim – Northern Freight Brokers, Inc. | No | No |
| 1-H | Secured Claim – Banc of America Leasing and Capital, LLC | No | No |
| 1-I | Secured Claim – Bank of America (JLT Mobil Building Interests) | No | No |
| 1-J | Secured Claim – Private Bank | No | No |
| 2-A | Administrative Convenience Class | No | No |
| 2-B | General Unsecured Claims | Yes | Yes |
| 2-C | Subordinated Unsecured Claims | Yes | Yes |

*N/A = Not applicable.

## ARTICLE III

### Treatment of Certain Unclassified Priority Claims

Certain unclassified Allowed claims which are not classified will be treated as follows:

(a)     Allowed administrative expenses.  Claims specified in Code § 507(a)(2), except as otherwise provided in this Article, including fees and expenses of professionals, will be paid in full in cash on the Effective Date or later as approved by the Court.  Except as to professional fees and expense as to which the Debtor is not permitted to make full payment without Court allowances,

these are paid currently. Therefore the Debtor believes that amounts in the category as of the Confirmation Date will be nominal except as to the professional fees of expenses which will be pending allowance, which the Debtor estimates at $200,000.

      (b)    <u>Allowed post-petition claims incurred in the ordinary course of Debtor's business</u>. These claims will be paid as such claims become due or as agreed between the holders of such claims and Debtor if such claims come due after the Effective Date. Debtor estimates these claims at $_____.

      (c)    <u>Statutory Fees and Court Costs</u>. Court costs and fees payable by Debtor under 28 U.S.C. § 1930 will be paid in full in cash on the Effective Date or as required under the Office of the United States Trustee's quarterly payment guidelines. Debtor estimates these claims at $975. After confirmation, Debtor will continue to pay quarterly fees to the Office of the United States Trustee and to file quarterly reports with the Office of the United States Trustee until this case is closed by the Court, dismissed or converted. This requirement is subject to any amendments to 28 U.S.C. § 1930(a)(6) that Congress makes retroactively applicable to confirmed Chapter 11 cases.

      (d)    <u>Other Priority Claims</u>. Any claims of this type will be paid in full on the earlier of the Effective Date or as they come due. Debtor does not believe there are any claims of this type.

## ARTICLE IV

## <u>Treatment of Classified Claims and Interests</u>

### Category 1--Secured Claims

      <u>Class 1-A - Secured Claim – First Horizon Home Loans</u>. This class consists of the Allowed secured claim of First Horizon Home Loans ("First Horizon") in the amount of approximately $1,462,754.52 as of the Filing Date. First Horizon's claim is fully secured by a mortgage in the Homestead Property. On and after the Effective Date, First Horizon will receive the following treatment:

      The holder of this Allowed claim shall receive monthly payments, as provided under the contract, until the Allowed claim is paid in full, according to the terms of the loan documents. Upon payment in full of its Allowed claim, First Horizon's lien on and security interest in the homestead shall be discharged and released. First Horizon and Debtor shall execute such documents and take such actions as are necessary to evidence the release of First Horizon's lien. Debtor's obligations to First Horizon under the terms of the prepetition loan documents with First Horizon shall be unimpaired.

      <u>Class 1-B - Secured Claim – Banc of America Leasing and Capital, LLC</u>. This class consists of the secured portion of the claim of Banc of America Leasing and Capital, LLC ("Banc of America"). The claim may be asserted to be secured by a judgment lien on the Debtor's Homestead Property. Because this property is exempt, the secured claim is $0. On and after the Effective Date, Banc of America Leasing and Capital, LLC will receive the following treatment:

To the extent that sufficient value exists in the Homestead Property in excess of the Class 1-A Claim and the Debtor's homestead exemption, the lien shall remain in effect. The balance of this claim shall be treated as a General Unsecured Claim in Class 2-B.

Class 1-C - Secured Claim – Associated Bank, N.A. This class consists of the secured claim of Associated Bank, N.A. ("Associated"). The claim may be asserted to be secured by a judgment lien on the Debtor's Homestead Property. Because this property is exempt, the secured claim is $0. On and after the Effective Date, Associated Bank, N.A. will receive the following treatment:

The claim shall be avoided as a lien on exempt property. The claim of Associated shall be treated as a General Unsecured Claim in Class 2-B.

Class 1-D - Secured Claim – GECPAC Investment II, Inc. and General Electric Capital Corp. This class consists of the secured portion of the claim of GECPAC Investment II, Inc. and General Electric Capital Corp. ("GE"). The claim is secured by a judgment on the Debtor's Homestead Property. Therefore, the secured claim is $0. On and after the Effective Date, GE will receive the following treatment:

The claim shall be avoided as a lien on exempt property. The claim of GE shall be treated as a General Unsecured Claim in Class 2-B.

Class 1-E - Secured Claim – Ford Motor Credit. This class consists of the Allowed secured claim of Ford Motor Credit secured by a lien on a 2010 Ford Expedition automobile in the approximate amount of $44,995.87. On and after the Effective Date, Ford Motor Credit will receive the following treatment:

The holder of this Allowed claim shall receive monthly payments, as provided under the applicable loan documents, until the Allowed claim is paid in full. Upon payment in full of its Allowed claim, Ford Motor Credit's lien on and security interest in the automobile shall be discharged and released. Ford Motor Credit and Debtor shall execute such documents and take such actions as are necessary to evidence the release of Ford Motor Credit's lien. Debtor's obligations to Ford Motor Credit under the terms of the prepetition contract with Ford Motor Credit shall be unimpaired.

Class 1-F - Secured Claim – Bank of America. This class consists of the Allowed secured claim of Bank of America in the amount of approximately $564,474.86 as of the Filing Date. Bank of America's claim is fully secured by a first priority mortgage in the Debtor's Cabin Property. On and after the Effective Date, Bank of America will receive the following treatment:

The holder of this Allowed claim shall be permitted to exercise its remedies under the applicable loan documents. This claim is unimpaired.

Class 1-G - Secured Claim – Northern Freight Brokers.  This class consists of a disputed mechanic's liens on the Cabin Property in favor of Northern Freight Brokers, Inc., d/b/a Gull Lake Construction ("NFB") on account of  materials and labor for construction of a second-story addition.  The amount of the mechanic's lien is $67,101.65.  On and after the Effective Date, NFB will receive the following treatment:

The holder of this claim shall be entitled to exercise its remedies, subject to the right of the Debtor or the Liquidating Agent to assert claims against NFB that may invalidate the lien.  The balance of any amount due the holder shall be treated as a General Unsecured Claim in Class 2-B.

Class 1-H - Secured Claim – Banc of America Leasing and Capital, LLC.  This class consists of the secured claim of Banc of America Leasing and Capital, LLC.  The claim is secured by a judgment lien on the Debtor's Cabin Property.  The estimated value of the judgment lien is $185,525.75, based on a total value of the Cabin Properties of $750,000.  On and after the Effective Date, Banc of America Leasing and Capital, LLC will receive the following treatment:

The holder of this claim shall be permitted to exercise its remedies.  The balance of amounts due the holder shall be treated as a General Unsecured Claim in Class 2-B.

Class 1-I - Secured Claim – Bank of America.  This class consists of the Allowed secured claim of Bank of America in the amount of approximately $18,356,131.33 as of the Filing Date.  The claim is secured by a pledge of membership interests in JLT Mobil Building LP.  On and after the Effective Date, Bank of America will receive the following treatment:

The Allowed claim shall be unimpaired and the holder may enforce its pledge according to its terms.

Class 1-J - Secured Claim – Private Bank.  This class consists of the Allowed secured claim of Private Bank Minnesota in the amount of approximately $175,000 as of the Filing Date.  The claim is secured by a promissory note and assignment of deposit account dated April 25, 2007 and a promissory note and assignment of deposit account dated June 29, 2007, which in turn support two Letters of Credit granted in favor of the City of Woodbury to secure obligations under a certain Commercial Developer's Agreement – Tamarack Hills II Addition.  On and after the Effective Date, Private Bank will receive the following treatment:

The Allowed claim shall be unimpaired and may be enforced according to its terms.

Category 2--Unsecured Claims

Class 2-A - Administrative Convenience Class.  This class consists of all Allowed unsecured claims against Debtor that are (a) in the amount of $1,000 or less, or (b) reduced by the holder of the claim to $1,000 and be treated under this class through an election on the ballot cast on this Plan.  These claims will be paid and satisfied in full by payment to each holder of an Allowed

claim in this class of cash equal to one hundred percent (100%) of the Allowed claim on the Effective Date.  Debtor estimates the amount to be paid in the class will be approximately $11,000.


Class 2-B - General Unsecured Claims.  This class consists of all Allowed unsecured claims against the Debtor that (a) are not entitled to priority and (b) are not classified elsewhere in this Plan.  Each Allowed claim in this class will be paid and satisfied in full by payment to each holder of an Allowed claim of its pro-rata share of distributions from the Post-Confirmation Estate.  Debtor estimates Allowed claims in this class will be approximately $90,000,000.  However, the proof of claim period is not yet closed and a large part of the claims in this class will be for deficiency claims on real estate loans where the Debtor is a guarantor, so there is a large range of potential claims.  The total allowed claims in this class is estimated to be in the range of $50,000,000 to $120,000,000.


Class 2-C – Subordinated Unsecured Claims Class.  This class consists of all Allowed unsecured claims against Debtor that are held by Entities.  These Allowed claims will be paid and satisfied in full by payment from pro-rata distributions to each holder of an Allowed claim in this class after all of the 2-B class claims are paid in full.  Debtor estimates these claims at least $10,915,027.70.


# ARTICLE V

## Means of Execution of Plan

(a)     Liquidating Agent.  In furtherance of and consistent with the purpose of the Plan, and with consent of the Oversight Committee, in addition to the powers and authority specifically provided in the Plan, the Liquidating Agent will have the power and authority to (i) hold, manage, sell, and distribute the assets of the Post-Confirmation Estate or which are added to the Post-Confirmation Estate to the holders of allowed administrative expense claims, priority claims, and allowed general unsecured claims in accordance with the provisions of this Plan, (ii) prosecute and resolve any Avoidance Claims and Causes of Action on behalf of the Debtor and the Post-Confirmation Estate, (iii) prosecute and resolve any claim objections, (iv) defend, protect and enforce any and all rights and interests of the Post-Confirmation Estate, (v) retain professionals and incur any reasonable and necessary expenses in performance of its duties, (vi) pay any and all claims, liabilities, losses, damages, costs and expenses incurred in connection with the operation of the Post-Confirmation Estate, including all fees and expenses of the Liquidating Agent and the Liquidating Agent's professionals accruing after the Effective Date, (vii) perform such other functions as are provided in the Plan, and (viii) have the power and authority to administer the closure of the Chapter 11 case.  In all circumstances, the Liquidating Agent will act in the best interests of the Post-Confirmation Estate and of the holders of claims entitled to distributions under the Plan.  The Liquidating Agent will be entitled to reasonable compensation and expenses, which will be reviewed by the Oversight Committee.  Any objections to such compensation and expenses will be resolved by the Bankruptcy Court on motion of either party.

(b)     <u>Oversight Committee</u>.  The Oversight Committee shall consist of three members: the Liquidating Agent and two representatives of the unsecured creditors selected by the Committee. The Oversight Committee will monitor the Liquidating Agent and all activities set forth in this Plan. The Oversight Committee will have the power and authority to ratify or reject decisions of the Liquidating Agent, and in its discretion, the Oversight Committee may delegate to the Liquidating Agent such power and authority as it deems proper.  The members of the Oversight Committee will not be paid for their services except for reimbursement of actual expenses incurred by such members.

(c)     <u>Liability and Indemnification of Liquidating Agent and Oversight Committee Members</u>.  Neither the Liquidating Agent, Oversight Committee members, nor their designees, employees, professionals, or agents will be liable for the act or omission of any other designee, employee, professional or agent, nor will the Liquidating Agent or Oversight Committee members be liable for any act or omission taken or omitted to be taken in their respective capacities, other than acts or omissions resulting from willful misconduct, gross negligence, or fraud.

(d)     <u>Exempt Assets</u>.  The Debtor shall be entitled to retain as exempt assets all property listed as exempt in the Schedules, including but not limited to:

(i)     Up to $360,000.00 in equity of the Homestead Property or sale proceeds thereof;

(ii)    $9,900 in household goods and furnishings located at 965 Summit Avenue, St. Paul;

(iii)   Wearing apparel for Debtor and children;

(iv)    Debtor's wedding ring;

(v)     Steinway piano to the extent allowed by law;

(vi)    Debtor's watch; and

(vii)   Viola with case and bow (used by minor daughter).

To the extent that any judgment lien impairs exempt property of the Debtor that lien is avoided under Section 522(f) of the Bankruptcy Code and other applicable law.  The liens so avoided include, without limitation, the liens described with respect to Classes 1-B, 1-C, and 1-D.

(e)     <u>Estate Assets</u>.  As of the Effective Date, and except as otherwise provided in this Plan, the Post-Confirmation Estate will continue to own all Estate Assets, including but not limited to:

(i)     Remaining cash in the estate in US Bank account # ....8681 (currently $1,100,000, subject to reductions for payment of necessary costs);

(ii)    Cash in PNC account (#.....2547);

| | |
|---|---|
| (iii) | Additional interest in common stock or promissory notes from Nazca Solutions, Inc. (estimated as up to $1,000,000); |
| (iv) | All avoidance powers including those formerly held by GE (as defined in Class 1-D); |
| (v) | Cabin property subject to mortgages and liens; |
| (vi) | Common stock in Private Bancorporation, Inc.; |
| (vii) | Rembrandt sketch; |
| (viii) | 1988 Mercedes convertible; |
| (ix) | Beaver coat and raccoon coat(s); |
| (x) | All Avoidance Claims and Causes of Action except as otherwise provided in this Plan; and |
| (xi) | All other Estate Assets not specifically dealt with in the Plan, including any property of the estate that was not scheduled and potential tax refunds. |

(f)    <u>Assets to be Abandoned</u>.  As of the Effective Date, the Post-Confirmation Estate shall abandon the following assets on the following terms:

| | |
|---|---|
| (i) | Causes of Action against Corsair Aviation (including ACM) and Kloeber; |
| (ii) | Causes of Action against Sean T. Hargarth and Northern Freight Brokers, Inc.; |
| (iii) | Causes of Action against Peter Mansour and Barry Roitblat in connection with Sproqit Technologies, Inc.; |
| (iv) | Secured Notes from Sproqit Technologies, Inc.; |
| (v) | Intellectual Property from Sproqit Technologies, Inc. per Exhibit C to the Schedules; |
| (vi) | Earnings from services performed by the Debtor after the Confirmation Date (the "Debtor's Salary"); and |
| (vii) | All potential claims against JLT Group, Inc. and Lake Region Building Maintenance, Inc. on account of transfers made from the Debtor prior to or after the Filing Date. |

With the exception of the assets described in (vi) and (vii) above, the Liquidating Agent will have the right to decide not to abandon these assets within 30 days after the Effective Date or to retain them and to liquidate them.  The Liquidating Agent will give the Debtor the opportunity to make a higher and better offer than any offer the Liquidating Agent receives.

(g)  Personal Property to be Abandoned for a Price.  The estate shall abandon the following assets on the following terms:

(i)  Household goods and furnishings, including audio, video, and computer equipment per schedules in other than those identified above as "Exempt Assets;"

(ii)  Other books, pictures and other art objects, antiques, stamps, coins, records, tapes, compact discs, and other collections or collectibles; wearing apparel; furs and jewelry; firearms; and sports, photographs and other hobby equipment per schedules, except as specifically listed in paragraph a of this section;

(iii)  Airline miles; and

(iv)  Note receivable from JLT Group, Inc.

The Debtor will make a payment to the estate in the amount of $25,000 within 90 days after the Effective Date subject to the right of the Liquidating Agent to verify the values and to decline to sell at this price.  The property will not transfer without the payment being made.  If these assets remain in the estate, the Liquidating Agent may liquidate them in the same manner as other assets of the Post-Confirmation Estate.

(h)  Ownership Interests to be Abandoned.  The estate shall abandon the ownership interests and the ownership interests that directly or beneficially own such interests (collectively, the "Abandoned Ownership Interests") in the following Entities:

(i)  331 Second Avenue, LLC (TriTech);
(ii)  JLT Roseville Corporate Center, LLC;
(iii)  3200 Como Associates, LLC;
(iv)  JLT Mobil Building Limited Partnership (Red Fox Road);
(v)  JLT East River Road, LLC;
(vi)  Bren Road, LLC;
(vii)  9800 Bren Property, LLC (Gateway South);
(viii)  WCB Restaurant Company ("Aperitif"), West Bend 15.5 LLC and West Biel 68 LLC;
(ix)  676 Hotel, LLC ("Sheraton St. Paul Woodbury Hotel");
(x)  JLT Group, Inc.;
(xi)  Lake Region Building Maintenance, Inc.;
(xii)  Team Parking, LLC;
(xiii)  10 RPP, LLC (Revenue Building);
(xiv)  Fillmore & State Holding Company, LLC;
(xv)  Shepard Road Acquisition Company, LLC;
(xvi)  Kennedy Building Associates, GP;
(xvii)  Century & Lake Holding, L.L.C.;
(xviii)  Stewart Avenue Acquisition, LLC;
(xix)  Battle Creek Lake Acquisition Company, LLC;

| (xx) | North Tamarack Associates, L.L.C.; |
| (xxi) | River Properties of St. Paul LP; |
| (xxii) | Trooien & Associates LP; |
| (xxiii) | Alexandra & Associates, L.L.C.; |
| (xxiv) | Jerry Realty, LP; |
| (xxv) | The Residences at The Bridges LP; |
| (xxvi) | Jerry Realty Corporation; |
| (xxvii) | Midway Warehouse, LP; |
| (xxviii) | Central Distribution, Inc.; |
| (xxix) | Corsair Aviation, LLC; |
| (xxx) | JLT Aircraft Holding Company, LLC; |
| (xxxi) | Minnesota Choice Aviation II, LLC; |
| (xxxii) | Minnesota Choice Aviation III, LLC; |
| (xxxiii) | Summit Aircraft, LP; |
| (xxxiv) | Summit Aircraft Corporation; |
| (xxxv) | Walker Aircraft, LLC; |
| (xxxvi) | Helicopter Acquisition Company No. 3 LLC; |
| (xxxvii) | Aircraft No. 1517 Company, LLC; |
| (xxxviii) | Aircraft No. 1074 Company, LLC; |
| (xxxix) | Helicopter Acquisition Company No. 1 LLC; |
| (xl) | Helicopter Acquisition Company No. 2 LLC; and |
| (xli) | Aircraft No. 99 Company, LLC. |

In exchange for abandoning these ownership interests:

1.      The Entities or the Debtor will pay $20,000 per month for 12 months starting 90 days after the Effective Date or, in the alternative, the Entities or the Debtor may pay $200,000 on or before 90 days after the Effective Date.  To secure payment of these amounts, the Debtor will grant security interests in these ownership interests to the Post-Confirmation Estate. However, the Debtor will not be personally liable for these payments.

2.      With the exception of Entities (x), (xi), and (xii), to the extent that any cash in any Entity on the Effective Date is not used to make payments to secured lenders or other creditors of the Entity, or to cover the cost of liquidation, and therefore becomes available to the Debtor, one-half shall be paid over to the Post-Confirmation Estate.

3.      To the extent refunds are received by an Entity for property taxes paid by the Entity prior to the Effective Date, and not used to make payments to tenants, or secured lenders or other creditors of the entity or to cover the costs of liquidation, and therefore becomes available to the Debtor, one-half shall be paid over to the Post-Confirmation Estate.

On or before the Effective Date, the Debtor could decline to have some of these ownership interests abandoned to him provided that such action would not create a tax distribution for the Post-Confirmation Estate.  In addition, to the extent that the Post-Confirmation Estate is subject to tax liability resulting from gains incurred prior to the Filing Date that are not transferred with the abandonment of the ownership interests described in this Article, the Debtor will to the extent necessary decline to accept abandoned ownership interests

in some entities so as to leave sufficient losses in the Post-Confirmation Estate to assure that there will be no taxable income to the Post-Confirmation Estate. The Liquidating Agent and the Debtor will cooperate to achieve this goal.

(i)     Settlement of Avoidance Claims.   As a result of the Settlement Agreement entered into with GE as of March 11, 2011 and approved by the Bankruptcy Court on March 21, 2011, certain liens and claims asserted by GE prior to the Filing Date by reason of a "charging order" on the ownership interests of the Debtor in certain of the Entities and claims that certain of the Entities had violated court orders issued in favor of GE, all GE liens and claims were treated as "preferences" under the Bankruptcy and were avoided under § 550 and transferred to the bankruptcy estate under § 551 of the Bankruptcy Code. Thus, the estate holds asserted liens on many of the ownership interests that are property of the bankruptcy estate. To the extent that any of these are among the Abandoned Ownership Interests or such interests are subsequently abandoned or otherwise transferred to the Debtor, the liens are released by this Plan. In addition, in consideration for the promise of the Entities or the Debtor to make certain payments to the estate under Article V(h), any claims against any of the Entities for the asserted transfers are released by this Plan.

## ARTICLE VI

## Distributions and Claims Administration

(a)     Method of Payment.  Payments under this Plan will be made by check, mailed with first class postage pre-paid, to the holder of each claim at the address listed on its proof of claim as of the Record Date, or if no proof of claim has been filed by the date of the hearing on confirmation, to the address listed on the Schedules as of the Record Date. Holders of claims as of the Record Date may contact the Liquidating Agent to amend their addresses.

(b)     Claims Administration Responsibility.

(i)     Reservation of Rights to Object to Claims.  Unless a claim is specifically Allowed under this Plan, or otherwise Allowed prior to or after the Effective Date, the Liquidating Agent shall have and retain any and all objections to any and all claims and motions or requests for the payment of claims, whether administrative expense, secured or unsecured, including without limitation any and all objections to the validity or amount of any and all alleged administrative expense claims, priority tax claims, liens and security interests, whether under the Bankruptcy Code, other applicable law or contract.

(ii)     Filing of Objections.  Unless otherwise ordered by the Bankruptcy Court, any objections to Claims other than administrative expense claims will be filed within sixty (60) days after the Effective Date (unless such day is not a business day, in which case such deadline will be the next business day thereafter). An objection to a claim will be deemed properly served on the claimholder if the Liquidating Agent effects service by any of the following methods: (A) in accordance with Federal Rule of Civil Procedure 4, as allowed and made applicable by Bankruptcy Rule 7004; (B) to the extent counsel for a claimholder is unknown, by first class mail, postage prepaid, on the signatory on the proof of claim or other representative identified on the

proof of claim or interest or any attachment thereto or (C) by first class mail, postage prepaid, on any counsel that has appeared on the behalf of the claimholder in the Chapter 11 case.

(iii)     Determination of Claims.  Except as otherwise agreed by the Liquidating Agent, any claim as to which a proof of claim or motion or request for payment was timely filed in the Chapter 11 case may be determined and liquidated pursuant to (A) an order of the Bankruptcy Court or (B) applicable non-bankruptcy law (which determination has not been stayed, reversed or amended and to which determination (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending), and will be deemed in such liquidated amount and satisfied in accordance with this Plan. Nothing contained in this Plan, the Disclosure Statement, or the confirmation order will constitute or be deemed a waiver of any claim, right, interest, or Cause of Action that the Liquidating Agent or the Post-Confirmation Estate may have against any person in connection with or arising out of any claim or claims, including without limitation any rights under Section 157(b) of Title 28 of the United States Code.

(c)     Procedures for Treating and Resolving Disputed Claims.

(i)     No Distributions Pending Allowance.  No payments or distributions will be made with respect to all or any portion of a disputed claim unless and until all objections to such disputed claim have been settled or withdrawn or have been determined by a Final Order, and the disputed claim has become an Allowed claim.

(ii)     Claim Estimation.  The Debtor or the Liquidating Agent may request estimation or limitation of any claim that is disputed, contingent or unliquidated pursuant to Section 502(c) of the Bankruptcy Code; provided, however, that the Bankruptcy Court will determine (A) whether such disputed claims are subject to estimation pursuant to Section 502(c) of the Bankruptcy Code and (B) the timing and procedures for such estimation proceedings, if any.

(iii)     No Distribution if Cause of Action Asserted.  No payment or distribution will be made with respect to all or any portion of a claim or Allowed claim held by a claimant against whom an Avoidance Claim or a Cause of Action is asserted unless and until such Avoidance Claim or Cause of Action has been settled or withdrawn or has been determined by Final Order.

(d)     Unclaimed Payments.  In the event a payment is returned to the Liquidating Agent unclaimed, with no indication of the payee's forwarding address, the Liquidating Agent will hold such payment for a period of three months from the date of return.  If not claimed by the payee by the end of that period, the payment will become property of the Post-Confirmation Estate.  In the event there are unclaimed funds and redistribution to other holders of claims in Class 2-B is impractical, the Liquidating Agent may contribute such funds to one or more pro bono organizations whose mission is the delivery of free bankruptcy legal services to those who cannot afford to pay for such services.

(e)     Proofs of Claim Not Timely Filed.  If proof of a claim is required under Bankruptcy Rule 3003 and is not timely filed according to the provisions of the Bankruptcy Code or applicable Final Order in the Chapter 11 case, the holder of such claim will not be treated as a creditor for

purposes of distribution under this Plan and will receive no distribution under this Plan on account of such claim.

## ARTICLE VII

### Retention and Enforcement of Claims or Interests Belonging to Debtor or Estate

On the Effective Date, the Post-Confirmation Estate shall be vested in and shall retain, and the Liquidating Agent may, at its option, enforce any claim or interest belonging to the Post-Confirmation Estate, including Causes of Action and the Avoidance Claims. All recoveries on any of the Post-Confirmation Estate's Causes of Action and Avoidance Claims shall be retained by Post-Confirmation Estate for use in making payments under this Plan or for costs of administering the Post-Confirmation Estate, at the Liquidating Agent's discretion.

## ARTICLE VIII

### Assumption and Rejection
### of Executory Contracts and Unexpired Leases

Attached to the Plan as <u>Exhibit A</u> is a list of executory contracts and leases that shall be assumed on the Confirmation Date with proposed cure amounts, if applicable. Unless an objection is filed prior to entry of the Confirmation Order, then any such amount shown on Exhibit A as "cure" shall be conclusively determined to be the amount required to cure any monetary or non-monetary default under any assumed executory contract or lease. If an executory contract and/or lease is not shown on Exhibit A, and has not been previously dealt with by prior Court order, such contract or lease will be deemed rejected effective on the Confirmation Date. All parties to any executory contracts and leases rejected pursuant to this provision must file a proof of claim within 30 days of the Confirmation Order or such other period set forth in the Confirmation Order if such Order sets a deadline for filing a proof of claim, or be forever barred from receiving any distribution under this Plan. The Debtor reserves the right to alter, amend or add to the list of executory contracts at any time prior to the Confirmation Date.

## ARTICLE IX

### Tax Matters

(a)    <u>Tax Attributes</u>. As of January 1, 2010, the first day of the Debtor's taxable year in which the case commenced, the Debtor had the following tax attributes:

- Net operating losses of $6,891,145;

- At-risk losses of $1,340,317;

- Capital loss carry-forwards of $364,694; and

- Passive loss carry-forwards of $37,255,997.

The total of all of the above is $45,852,153 (the "Tax Attributes"). Under Section 1398(g) of the Internal Revenue Code of 1986, as amended, the bankruptcy estate succeeds to and may take into account the Tax Attributes. For tax purposes, the Entities in which the Debtor holds ownership interests will either be treated as "disregarded entities" or "regarded entities." A disregarded entity, such as a single member limited liability company, is treated for tax purposes as if the entity did not exist and the property owned by the disregarded entity was owned directly by the equity holder. A regarded entity may either be a separate taxpaying entity, such as a C corporation, or a pass-through entity, such as a partnership or an S corporation. A pass-through entity does not itself pay tax on its income but passes through its income to its owners. Limited liability companies are generally taxed as pass-through entities. Certain of the Tax Attributes, such as passive loss carry-forwards and at-risk losses, may be directly associated with a particular Entity. Any sale or exchange of the ownership of the property owned by the Entities or any sale or exchange of the ownership of the Entities, including any foreclosure on the property or the ownership interests, other than an abandonment, constitutes a taxable event ("Taxable Event") which will likely result in gain or loss for income tax purposes. In general, to the extent that a Taxable Event occurred before the Filing Date, the gain or loss will be allocated to the Debtor. Similarly, to the extent that a Taxable Event occurred on or after the Filing Date the gain or loss will be allocated to the bankruptcy estate. If, however, the sale or exchange occurs in an entity that is a pass-through Entity, the allocation of gain or loss may depend on the ownership of the Entity on the last day of the Entity's tax year.

Most of the properties owned by the Entities have a low tax basis so that when there is a Taxable Event, it is likely that the fair market value of the properties will exceed the basis and result in gain for income tax purposes. The total amount of gain will be significant, and could exceed all of the Tax Attributes that might be used to offset the gain. An abandonment of the entities by the bankruptcy estate does not constitute a Taxable Event. If the bankruptcy estate abandons the entities, both the ownership of the Entities and the passive loss carry-forwards and at-risk losses associated with such Entities will pass to the Debtor. Other Tax Attributes will remain with the bankruptcy estate. If a Taxable Event involving the sale or exchange of property owned by an Entity occurred on or after the Filing Date and before abandonment, but an abandonment thereafter occurs prior to the last day of the Entity's tax year, gain or loss from the Taxable Event may be allocated to the Debtor rather than the bankruptcy estate.

If there is taxable income in the bankruptcy estate exceeding the Tax Attributes that could be used to reduce such taxable income, the resulting administrative priority tax claim could exceed the value of the assets in the Post-Confirmation Estate and eliminate any distribution to unsecured creditors. It is the intent of this Plan to prevent that from happening, primarily by abandoning the ownership interests in the Entities to the Debtor, leaving him to deal with the tax consequences. To the extent that a Taxable Event allocable to the bankruptcy estate has already occurred or is otherwise unavoidable, the Liquidating Agent will file the necessary tax returns and apply Tax Attributes to prevent the Post-Confirmation Estate from having taxable income. If necessary, and only to the extent necessary, to assure that there will be no taxable income to the Post-Confirmation Estate, the Debtor will decline to accept abandoned ownership interests in some entities so as to leave sufficient Tax Attributes in the Post-Confirmation Estate for that purpose. The Liquidating Agent and the Debtor will cooperate to achieve this goal.

(b)    <u>Real Estate Tax Refunds</u>.  Any real estate tax refunds received by the entity owning the real estate will first subject to the obligations of the Entity to, as the case may be, turn over such refund to the tenants or lenders who paid the underlying real estate taxes or apply such refunds to the Entity's obligations to its creditors or to costs of operation or liquidation.  To the extent refund amounts exist that are distributable on account of ownership interests, such amounts will be payable to the Post-Confirmation Estate according to Article V(h)1.

## ARTICLE X

### General Provisions

(a)    In the event this Plan is not confirmed under Code § 1129(a), the Debtor requests that this Plan be confirmed under Code § 1129(b).

(b)    The Debtor has no retiree benefits, as that term is defined in Section 1114 of the Bankruptcy Code.

(c)    This Plan affects no rates subject to approval by any governmental regulatory commission.

(d)    The Debtor and the Liquidating Agent will take any action and/or execute any reasonably appropriate documents as is reasonably appropriate to effectuate the intent of the Plan.  The provisions of this Plan do not in any way affect, negate or change the liability of any person or entity that guarantied to any creditors the payment of Debtor's indebtedness.

## ARTICLE XI

### Conditions Precedent

(a)    <u>Conditions to the Effective Date</u>.  This Plan shall not become effective unless and until each of the following conditions have been satisfied in full in accordance with the provisions specified below:

(i)    The Court will have approved by Final Order the Disclosure Statement with respect to this Plan in form and substance acceptable to the Debtor.

(ii)    The Confirmation Order will be in form and substance acceptable to the Debtor.

(iii)    The Confirmation Order will be a Final Order, and no request for revocation of the confirmation order under Section 1144 of the Bankruptcy Code will have been made, or if made, will remain pending.

(iv)    The Debtor will have sufficient cash on hand to pay obligations required to be paid on the Effective Date of this Plan.

**ARTICLE XII**

**Events of Default**

Unless otherwise provided elsewhere in this Plan, default with respect to the Debtor's obligations to the Post-Confirmation Estate or any creditor or holder of Allowed claim under this Plan will not occur unless and until the Liquidating Agent or such creditor or holder has delivered written notice of such default to the Debtor and the Debtor has failed to cure such default within 30 days after receipt of such written notice. If the Debtor fails to cure a default, a creditor's sole remedy is a claim for breach of contract and the Liquidating Agent shall have such a claim and any other remedy provided for in the Plan or pursuant to any interests the Debtor has granted to the Post-Confirmation Estate under the Plan.

**ARTICLE XIII**
**Effect of Confirmation**

(a)     <u>Discharge</u>. Except as otherwise provided in this Plan, confirmation of this Plan **immediately** entitles the Debtor to the full benefit of Section 1141 of the Bankruptcy Code and discharges, waives and releases Debtor from any debt that arose before the Confirmation Date and any debt of a kind specified in Code §§ 502(g), 502(h) or 502(i), regardless of whether or not proof of the claim based on such debt was filed or deemed filed under Code § 501, such claim is allowed under Code § 502, or the holder of such claim has accepted the Plan. The payments of, distributions on account of, or treatments of claims in this Plan are deemed to satisfy in full all claims. All property of the Debtor and the estate is dealt with by this Plan; therefore, on the Effective Date, all Assets and other property of the Debtor and the estate vests in the Post-Confirmation Estate or the Debtor as provided in the Plan and such property is free and clear of all liens, encumbrances, claims and interests of creditors and equity security holders, except to the extent the Plan explicitly provides that such liens, encumbrances, claims or interests are retained.

(b)     <u>Discharge Injunctions</u>. As of the Effective Date and subject to its occurrence, all persons that have held, currently hold or may have asserted a claim or other debt, liability, interest or other right that is discharged, released or terminated pursuant to the Plan, are hereby permanently enjoined from commencing or continuing, in any manner or in any place, any action or other proceeding, enforcing, collecting or recovering in any manner any judgment, award, decree or order, creating, perfecting or enforcing any lien or encumbrance, asserting a set-off, right or subrogation or recoupment of any kind against any debt, liability or obligation due to any such releasing person, and from commencing or continuing any action, in any manner or in any place where the foregoing does not comply with or is inconsistent with the provisions hereof.

**ARTICLE XIV**

**Modification of Plan**

The Debtor may amend or modify this Plan in the manner provided for under Code § 1127(a) or (b). The Debtor will give notice of any proposed modification to the United States

Trustee and to any other parties designated by the Court. The Debtor also reserves the right to make such modifications at any hearings on confirmation as are necessary to permit this Plan to be confirmed under Code § 1129(b).

## ARTICLE XV

### Plan Consummation and Continuing Jurisdiction

The Court will retain jurisdiction until this Plan has been fully consummated for the following purposes: classification of the claims of creditors and allowance of the claims of creditors; allowance of claims for damages from the rejection of executory contracts; determination of all questions and disputes regarding title to the Assets of the Post-Confirmation Estate and determination of all causes of actions between the Debtor, the Liquidating Agent and any other party, including but not limited to any claim, interest, or objection retained under Articles V or VI of this Plan; correction of any defect; the curing of any omission or the reconciliation of any inconsistency in this Plan or the order of confirmation as may be necessary to carry out the purpose and intent of this Plan, on notice or ex parte, as the Court will determine to be appropriate; interpretation and enforcement of the terms of this Plan; shortening or extending, for cause, of time fixed for doing any act or thing under this Plan, on notice or ex parte, as the Court will determine to be appropriate; entry of any order, including any injunction, necessary to enforce the title, rights, and powers of the Post-Confirmation Estate; and entry of an order concluding and terminating this case. The Court may exercise its jurisdiction after notice and a hearing or ex parte, as the Court determines to be appropriate. The Plan is fully consummated upon the fulfillment by Debtor's satisfaction of all of Debtor's obligations under this Plan.

*[Remainder of page intentionally left blank.]*

IN WITNESS WHEREOF, the undersigned has executed this Debtor's Plan of Liquidation as of the date set forth above.

By: _____

Gerald Trooien

James L. Baillie (#3980)
Douglas W. Kassebaum (#386802)
Cynthia A. Moyer (#211229)
Sarah M. Gibbs (#0390238)
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, #4000
Minneapolis, MN 55402
Telephone: (612) 492-7292
Facsimile: (612) 492-7070
jbaillie@fredlaw.com
dkassebaum@fredlaw.com

ATTORNEYS FOR DEBTOR

4820703

## Exhibit A

## Executory Contracts

| Counterparty | Description | Cure Amount | Assume / Reject |
|---|---|---|---|
| Abbott, Emily | Month to month rent of carriage house located at Debtor's St. Paul residence. | $0.00 | Assume |
| EdinAlarm | Residential Security and Fire Protection (alarm) for St. Paul residence. | $0.00 | Assume |
| Hays Companies | Chartis Private Client Group Insurance Policy - Homeowners & watercraft | $0.00 | Assume |
| Hays Companies | Chartis Private Client Group Insurance Policy - Special Collections Policy | $0.00 | Reject |
| Hays Companies | Chartis Private Client Group Insurance Policy - Auto policy | $0.00 | Assume |
| Hays Companies | Chartis Private Client Group Insurance Policy - Umbrella Policy | $0.00 | Assume |
| Lifetime Fitness | Month to month Gym membership | $0.00 | Assume |
| People's Security | Cabin security/alarm | $0.00 | Reject |
| Southview Country Club | Country club membership | $0.00 | Reject |