UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

Gerald Trooien,                                     Case No. BKY 10-37695

                    Debtor.                          Chapter 11 Case

---

**DEBTOR'S AMENDED PLAN OF LIQUIDATION
DATED MAY 25, 2011**

---

Debtor Gerald Trooien (the "Debtor" or "Trooien") proposes the following Plan of Liquidation ("Plan") under Chapter 11 of the Bankruptcy Code.

## ARTICLE I

### Definitions

Capitalized terms used in this Plan have the following meanings. The Bankruptcy Code also defines many terms; those definitions are incorporated by reference.

"Abandoned Ownership Interests" has the meaning set forth in Article V(h).

"Allowed" means with respect to any claim, (a) a claim that has been scheduled by the Debtor in its Schedules as other than disputed, contingent or unliquidated and as to which the Debtor or any other party-in-interest has not filed an objection; (b) a claim that either is not a contested claim or has been allowed by a Final Order; (c) a claim that is determined by the Debtor to be allowed; (d) a claim that is allowed in a stipulation or settlement executed prior to or after the Effective Date; (e) a claim relating to a rejected executory contract or unexpired lease that is not a contested claim or has been allowed by a Final Order, only if a proof of claim has been timely filed; or (f) a claim as to which a proof of claim has been timely filed and as to which the Debtor or any party-in-interest has not filed an objection; and with respect to all claims, only after reduction for applicable setoff and similar rights of the Debtor.

"Associated" has the meaning set forth in Article IV, Class 1-C.

"Avoidance Claim" means any claim of the Debtor or the bankruptcy estate pursuant to Sections 544, 545, 547, 548, 549, 550 or 551 of the Bankruptcy Code.

"BAL" has the meaning set forth in Article IV, Class 1-B.

"Bankruptcy Code" or "Code" means Title 11 of the United States Code.

"Bankruptcy Rule" or "Rule" means a Federal Rule of Bankruptcy Procedure.

"Cabin Property" means 22759 E. Lake Hubert Dr., Lake Edward Twp., MN, Crow Wing County legally described as:

That part of Government Lot 1, Section 30, Township 135, Range 28 West, Crow Wing County, Minnesota, described as follows:

Commencing at the Northeast corner of said Section 30; thence North 88 degrees 49 minutes 30 seconds West, assumed bearing, along the North line of said Section 30 for a distance of 1040.00 feet; thence South 21 degrees 28 minutes 30 seconds West 763.45 feet to the point of beginning of the tract to be herein described; thence South 37 degrees 37 minutes 10 seconds West along the Westerly right of way line of East Lake Hubert Drive 175.47 feet; thence North 52 degrees 23 minutes 00 seconds West 175 feet, more or less, to the shoreline of LAKE HUBERT; thence Northeasterly along said shoreline to the intersection with a line bearing North 60 degrees 27 minutes 00 seconds West from the point of beginning; thence South 60 degrees 27 minutes 00 seconds East 191 feet, more or less, to the point of beginning.

"Causes of Action" means any and all actions, proceedings, causes of action (including, without limitation, any causes of action of a debtor or debtor in possession under chapter 5 of the Bankruptcy Code such as the Avoidance Claims), liabilities, obligations, suits, reckonings, covenants, contracts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims, rights to object to claims, variances, trespasses, damages, judgments, executions, claims and demands whatsoever, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured or whether asserted or assertable directly or derivatively, in law, equity or otherwise, and all rights thereunder or attendant thereto.

"Committee" means the official committee of the unsecured creditors appointed in this Bankruptcy Case.

"Confirmation Date" means the date on which the Confirmation Order is entered.

"Confirmation Order" means the order confirming this Plan.

"Court" means a United States Bankruptcy Judge for the District of Minnesota, or any other court having competent jurisdiction to issue an order in this case.

"Creditor" means holders of claims entitled to distributions under the Plan.

"Debtor" means Gerald Trooien.

"Disclosure Date" has the meaning set forth in Article XIII.

"<u>Disclosure Statement</u>" means the Disclosure Statement In Support of Debtor's Amended Plan of Liquidation dated May 20, 2011 and as may be further revised or modified or amended.

"<u>Effective Date</u>" means the first day following the day on which the Confirmation Order becomes a Final Order and the conditions of Article XI have been satisfied.

"<u>Entities</u>" means, for purposes of this Plan, any corporation, partnership, limited liability company or similar organization reorganized as a legal person which is owned in whole or in part, directly or indirectly by Debtor, including but not limited to those listed on Attachment B-13/14 to Schedule B of the Schedules.

"<u>Equity Value</u>" has the meaning set forth in Article V(h)(8).

"<u>Estate Assets</u>" means all the right, title, and interest in and to property of whatever type or nature pursuant to Sections 541 and 1115 of the Bankruptcy Code, including Avoidance Claims and Causes of Action, that are not expressly abandoned or otherwise transferred to the Debtor under this Plan.

"<u>Estate Retained Shell Entities for Tax Purposes</u>" has the meaning set forth in Article V(h)(6).

"<u>Exempt Property</u>" has the meaning set forth in Article V(d)(1).

"<u>Filing Date</u>" means October 25, 2010.

"<u>Final Order</u>" means an order of the Court which has not been reversed, stayed, modified, or amended and the time to appeal from such order has expired.  The Debtor may elect to waive provisions relating to appeal and treat any order of this Court as a Final Order and may distribute and otherwise proceed under this Plan, even if there is a pending motion to extend time for appeal or a pending appeal, unless the order is stayed.

"<u>First Horizon</u>" has the meaning set forth in Article IV, Class 1-A.

"<u>GE</u>" has the meaning set forth in Article IV, Class 1-D.

"<u>Group A</u>" has the meaning set forth in Article V(h)(4).

"<u>Group B</u>" has the meaning set forth in Article V(h)(5).

"<u>Group C</u>" has the meaning set forth in Article V(h)(6).

"<u>Homestead Property</u>" means 965 Summit Avenue, St. Paul, MN legally described as:

The East 1/2 of the West 1/2 of Lot 17, and the East 1/2 of Lot 17, and all of Lots 18 and 19, Block 28, Summit Park Addition to St. Paul, Ramsey County, Minnesota

or if the real property is sold, the proceeds of such sale.

"Liquidating Agent" means the individual selected by the Committee and approved by the Court to be the successor to the assets of the bankruptcy estate on behalf of the Creditors and to undertake and perform the powers and duties of the Liquidating Agent set out in the Plan. The Liquidating Agent shall assume his or her powers and duties upon the entry of the Confirmation Order. The Committee has selected James Cullen of Alliance Management Company.

"Liquidating Fund" has the meaning set forth in Article V(a).

"Net Distributions" has the meaning set forth in Article V(h)(7).

"Northern Freight Brokers" has the meaning set forth in Article IV, Class 1-G.

"Oversight Committee" means the committee of three persons which will be comprised of the Liquidating Agent and two unsecured creditors approved by the Court to undertake the powers and duties of the Oversight Committee set out in the Plan. The Oversight Committee shall assume its powers and duties upon the entry of the Confirmation Order.

"Plan" means this Debtor's Plan of Liquidation as revised or modified or amended.

"Private Bank" has the meaning set forth in Article IV, Class 1-J.

"Record Date" means the last date on which a claim transfer will be recognized. The Record Date is the Confirmation Date.

"Schedules" means the schedules of assets and liabilities of Debtor and the statement of affairs on file with the Clerk of the United States Bankruptcy Court for the District of Minnesota, as amended or modified in accordance with Bankruptcy Rule 1009.

"Sharing Agreement" has the meaning set forth in Article V(h)(4).

"Specified Entity" has the meaning set forth in Article V(h)(4).

"Subsequent Sales Additional Payment" has the meaning set forth in Article V(h)(11).

## ARTICLE II

### Classification of Claims and Interests

The following table designates the classes of claims against and equity interests in the Debtor and specifies which of those classes are (i) impaired or unimpaired by the Plan and

(ii) entitled to vote to accept or reject the Plan in accordance with Section 1126 of the Bankruptcy Code.

| Class | Designation | Impaired | Entitled to Vote |
|-------|-------------|----------|------------------|
| N/A | Administrative Expenses | N/A | No |
| N/A | Priority Claims | N/A | No |
| 1-A | Secured Claim – First Horizon | No | No |
| 1-B | Secured Claim – BAL | N/A | No |
| 1-C | Secured Claim – Associated | N/A | No |
| 1-D | Secured Claim – GE | N/A | No |
| 1-E | Secured Claim – Ford Motor Credit | No | No |
| 1-F | Secured Claim – Bank of America | No | No |
| 1-G | Secured Claim – Northern Freight Brokers | No | No |
| 1-H | Secured Claim – BAL | No | No |
| 1-I | Secured Claim – Bank of America (JLT Mobil Building Interests) | No | No |
| 1-J | Secured Claim – Private Bank | No | No |
| 2-A | Administrative Convenience Class | No | No |
| 2-B | General Unsecured Claims | Yes | Yes |
| 2-C | Subordinated Unsecured Claims | Yes | Yes |

*N/A = Not applicable.

## ARTICLE III

### Treatment of Certain Unclassified Priority Claims

Certain unclassified Allowed claims which are not classified will be treated as follows:

(a)      Allowed administrative expenses.  Claims specified in Code § 507(a)(2), except as otherwise provided in this Article, including fees and expenses of professionals, will be paid from the Liquidating Fund in full in cash on the Effective Date or later as approved by the Court. Except as to professional fees and expenses as to which the Debtor is not permitted to make full payment without Court approval, these are paid currently.  Therefore the Debtor believes that amounts in the category as of the Confirmation Date will be nominal except as to the professional fees of expenses which will be pending allowance, which the Debtor estimates at $272,000.

(b)      Allowed post-petition administrative expense claims allowable under section 503(b) of the Bankruptcy Code. These claims will be paid from the Liquidating Fund as such claims become due or as agreed between the holders of such claims and Liquidating Agent if such claims come due after the Effective Date.  Debtor estimates that these claims are nominal.

(c)      Statutory Fees and Court Costs.  Court costs and fees payable by Debtor under 28 U.S.C. § 1930 will be paid from the Liquidating Fund in full in cash on the Effective Date or as required under the Office of the United States Trustee's quarterly payment guidelines.  Debtor

estimates these claims at $975. After confirmation, the Liquidating Agent will continue to pay quarterly fees to the Office of the United States Trustee and to file quarterly reports with the Office of the United States Trustee until this case is closed by the Court, dismissed or converted. This requirement is subject to any amendments to 28 U.S.C. § 1930(a)(6) that Congress makes retroactively applicable to confirmed Chapter 11 cases.

(d)     Other Priority Claims.  Any claims of this type will be paid from the Liquidating Fund in full on the earlier of the Effective Date or as they come due.  Debtor does not believe there are any claims of this type.

## ARTICLE IV

## Treatment of Classified Claims and Interests

### Category 1--Secured Claims

Class 1-A - Secured Claim – First Horizon.  This class consists of the Allowed secured claim of First Horizon Home Loans ("First Horizon") in the amount of approximately $1,462,754.52 as of the Filing Date.  First Horizon's claim is fully secured by a mortgage in the Homestead Property.  On and after the Effective Date, First Horizon will receive the following treatment:

> The holder of this Allowed claim shall continue to be entitled to receive, but not from Liquidating Fund, payments of $9,858.32 per month until the Allowed claim is paid in full, according to the terms of the applicable loan documents and the current mortgage lien shall remain in effect.  Upon payment in full of its Allowed claim, First Horizon's lien on and security interest in the homestead shall be discharged and released and at such time First Horizon and Debtor shall execute such documents and take such actions as are necessary to evidence the release of First Horizon's lien.  If the monthly payments are not made, First Horizon is entitled to exercise its right under this mortgage.  This claim is unimpaired.

Class 1-B - Secured Claim – BAL.  This class consists of the Allowed secured portion of the claim of Banc of America Leasing and Capital, LLC ("BAL").  The claim may be asserted to be secured by a judgment lien on the Debtor's Homestead Property and the Debtor's Cabin Property, separately treated under Class 1-H below.  On and after the Effective Date, BAL will receive the following treatment:

> To the extent that sufficient value exists in the Homestead Property in excess of the Class 1-A Claim and the Debtor's homestead exemption, the lien shall remain in effect.  The balance of this claim, net any recovery BAL obtains on account of its Allowed secured claim under Class 1-H,  shall be treated as a General Unsecured Claim in Class 2-B.

Class 1-C - Secured Claim – Associated.  This class consists of the Allowed secured claim of Associated Bank, N.A. ("Associated").  The claim may be asserted to be secured by a

judgment lien on the Debtor's Homestead Property. Because this property is exempt, the secured claim is $0. On and after the Effective Date, Associated Bank, N.A. will receive the following treatment:

> The claim shall be avoided under section 522(f) of the Bankruptcy Code as a lien on exempt property. The claim of Associated shall be treated as a General Unsecured Claim in Class 2-B.

Class 1-D - Secured Claim – GE. This class consists of the secured portion of the claim of GECPAC Investment II, Inc. and General Electric Capital Corp. ("GE"). The claim is secured by a judgment on the Debtor's Homestead Property. Therefore, the Allowed secured claim is $0. On and after the Effective Date, GE will receive the following treatment:

> The claim shall be avoided under section 522(f) of the Bankruptcy Code as a lien on exempt property. The claim of GE shall be treated as a General Unsecured Claim in Class 2-B.

Class 1-E - Secured Claim – Ford Motor Credit. This class consists of the Allowed secured claim of Ford Motor Credit secured by a lien on a 2010 Ford Expedition automobile in the approximate amount of $44,995.87. On and after the Effective Date, Ford Motor Credit will receive the following treatment:

> The holder of this Allowed claim shall continue to receive, but not from the Liquidating Fund, payments of $1,285.60 per month until the Allowed claim is paid in full, as provided under the applicable loan documents and its current security interest shall remain in effect. Upon payment in full of its Allowed claim, Ford Motor Credit's lien on and security interest in the automobile shall be discharged and released. Ford Motor Credit and Debtor shall execute such documents and take such actions as are necessary to evidence the release of Ford Motor Credit's lien. This claim is unimpaired.

Class 1-F - Secured Claim – Bank of America. This class consists of the Allowed secured claim of Bank of America in the amount of approximately $564,474.86 as of the Filing Date. Bank of America's claim is fully secured by a first priority mortgage in the Debtor's Cabin Property. On and after the Effective Date, Bank of America will receive the following treatment:

> The holder of this Allowed secured claim shall be permitted to exercise its remedies under the applicable loan documents. This claim is unimpaired.

Class 1-G - Secured Claim – Northern Freight Brokers. This class consists of a disputed mechanic's lien on the Cabin Property in favor of Northern Freight Brokers, Inc., d/b/a Gull Lake Construction ("Northern Freight Brokers") on account of materials and labor for construction of a second-story addition. The most recent mechanic's lien is in the amount of

$67,101.65, but the proof of claim has been filed in the amount of $155,043.51 to include claimed interest and attorney fees. On and after the Effective Date, Northern Freight Brokers will receive the following treatment:

> The amount of this claim shall be determined either by this Court or by the Crow Wing County District Court. To the extent that the holder of this claim is determined to have a valid and enforceable mechanic's lien, upon relief from the automatic stay, the holder of such Allowed secured claim may exercise its remedies against the Cabin Property as the holder of a mechanic's lien under Minnesota statutes. To the extent that the holder of this claim is determined to have a valid claim which is not a mechanic's lien or which cannot for any reason be enforceable against the Cabin Property, that portion of the claim, if any, shall be treated as a General Unsecured Claim in Class 2-B.

Class 1-H - Secured Claim – BAL. This class consists of the secured claim of BAL. The claim is secured by a judgment lien on the Debtor's Cabin Property and the Debtor's Homestead Property, separately treated under Class 1-B above. The estimated value of the judgment lien is $185,525.75, based on an estimated total value of the Cabin Property of $750,000. On and after the Effective Date, BAL will receive the following treatment:

> The holder of this Allowed secured claim shall be permitted to exercise its remedies as the holder of a judgment lien against the Cabin Property to the extent authorized by Minnesota law. The balance of amounts due the holder, net any recovery BAL obtains on account of its Allowed secured claim under Class1-B, shall be treated as a General Unsecured Claim in Class 2-B. This claim is unimpaired.

Class 1-I - Secured Claim – Bank of America. This class consists of the Allowed secured claim of Bank of America in the amount of approximately $18,356,131.33 as of the Filing Date. The claim is secured by a pledge of membership interests in JLT Mobil Building LP. On and after the Effective Date, Bank of America will receive the following treatment:

> The holder of this Allowed claim shall be permitted to exercise its remedies under the applicable loan documents and Minnesota law. This claim is unimpaired.

Class 1-J - Secured Claim – Private Bank. This class consists of the Allowed secured claim of Private Bank Minnesota ("Private Bank") in the amount of approximately $175,000 as of the Filing Date. The claim is secured by a promissory note and assignment of deposit account dated April 25, 2007 and a promissory note and assignment of deposit account dated June 29, 2007, which in turn support two Letters of Credit granted in favor of the City of Woodbury to secure obligations under a certain Commercial Developer's Agreement – Tamarack Hills II Addition. On and after the Effective Date, Private Bank will receive the following treatment:

> The holder of this Allowed claim shall be permitted to exercise its remedies against its collateral to the extent permitted by the applicable documents and law. This claim is unimpaired.

<u>Category 2--Unsecured Claims</u>

Class 2-A - <u>Administrative Convenience Class</u>.  This class consists of all Allowed unsecured claims against Debtor that are (a) in the amount of $1,000 or less, or (b) reduced by the holder of the claim to $1,000 and be treated under this class through an election on the ballot cast on this Plan.  These claims will be paid and discharged payment from the Liquidating Fund to each holder of an Allowed claim in this class of cash equal to one hundred percent (100%) of the Allowed claim on the Effective Date.  Debtor estimates the Allowed claims in this class will be approximately $13,000.

Class 2-B - <u>General Unsecured Claims</u>.  This class consists of all Allowed unsecured claims against the Debtor that (a) are not entitled to priority and (b) are not classified elsewhere in this Plan.  Each Allowed claim in this class will be paid and discharged by payment from the Liquidating Fund to each holder of an Allowed claim of its pro-rata share of distributions from all assets of the estate not specifically transferred to some other party.  Debtor estimates Allowed claims in this class will be approximately $100,000,000 after filed claims are reduced by application of the value of collateral.

Class 2-C - <u>Subordinated Unsecured Claims</u>.  This class consists of all Allowed unsecured claims against Debtor that are held by Entities.  These Allowed claims will be paid by payment from the Liquidating Fund from pro-rata distributions to each holder of an Allowed claim in this class only after all of the Class 2-B claims are paid in full.  The Debtor anticipates that there will be no distributions to holders of Class 2-C claims, which will be discharged regardless of payment.  The Debtor estimates that Allowed claims in this class in this class to be approximately $10,920,000.

**ARTICLE V**

**<u>Means of Execution of Plan</u>**

(a)     <u>Liquidating Fund and Liquidating Agent</u>.

(i)     <u>Liquidating Fund</u>.  Upon the confirmation of this Plan, except as designated in this Plan, all of the Estate Assets shall become part of a liquidating fund ("Liquidating Fund") which shall be used for the payments under this Plan, under the direction of the Liquidating Agent.

(ii)     <u>Liquidating Agent</u>.  The Liquidating Agent shall be appointed by the Committee and the appointment shall be approved by the Court.  In the event of the resignation or termination of the Liquidating Agent, any successor Liquidating Agent shall be appointed by the Oversight Committee.  The Liquidating Agent's primary task is to receive the Liquidating Fund, liquidate assets and distribute proceeds for the benefit of Creditors.

        (iii)   <u>Powers and Duties of the Liquidating Agent</u>.  In furtherance of and consistent with the purpose of the Plan, and subject to the Oversight Committee, in addition to the powers and authority specifically provided elsewhere in the Plan, the Liquidating Agent shall receive the Liquidating Fund, have the powers of an agent to act for the holders of claims under the Plan and, where applicable, a "representative of the estate" as set forth in 11 U.S.C. § 1123(b)(3)(B), together with the power and authority to (A) hold, manage or sell the Liquidating Fund, (B) sell property to the Debtor and to enter into any transactions or agreements with the Debtor or compromise any disputes with the Debtor, (C) distribute the proceeds to the holders of allowed administrative expense claims, priority claims, allowed general unsecured claims and other claims in accordance with the provisions of this Plan, (D) prosecute and resolve any Avoidance Claims and Causes of Action on behalf of the Debtor, (E) prosecute and resolve any claim objections, (F) defend, protect and enforce any and all rights and interests transferred to him, (G) retain professionals and incur any reasonable and necessary expenses in performance of its duties, (H) pay any and all claims, liabilities, losses, damages, costs and expenses incurred by him, including all fees and expenses of the Liquidating Agent and professionals retained by the Liquidating Agent, (I) file estate tax returns and other tax returns as required and provide tax information to Creditors, (J) operate assets for periods reasonably required to preserve or maximize value pending liquidation and distribution to Creditors, (K) invest cash in demand or time deposits to obtain market rates of return pending distributions, (L) perform such other functions as are provided in the Plan, and (M) have the power and authority to administer the closure of the Chapter 11 case.  In all circumstances, the Liquidating Agent will act in the best interests of the Creditors.

        (iv)   <u>Compensation and Retention of Professionals</u>.  The Liquidating Agent will be entitled to be paid reasonable compensation and expenses from the Liquidating Fund, subject to the consent of the Oversight Committee.  The Liquidating Agent will be entitled to retain professionals to assist him in his duties and to pay such professionals reasonable compensation and expenses, subject to the consent of the Oversight Committee.  Such compensation and expenses shall be paid from the Liquidating Fund.  Any dispute as to such compensation and expenses between the Liquidating Agent, his professionals, and the Oversight Committee or any objection by any party in interest as to such compensation and expenses will be resolved by the Court on motion.

        (b)   <u>Oversight Committee</u>.  The Oversight Committee shall consist of three members: the Liquidating Agent and two representatives of the unsecured creditors selected by the Committee.  In the event of the resignation or termination of any member of the Oversight Committee, any successor member shall be appointed by the remaining member or members. The Oversight Committee will monitor the Liquidating Agent and all activities set forth in this Plan.  The Oversight Committee will have the power and authority to ratify or reject decisions of the Liquidating Agent, and in its discretion, the Oversight Committee may delegate to the Liquidating Agent such power and authority as it deems proper.  The members of the Oversight Committee will not be paid for their services except for reimbursement of actual expenses incurred by such members.

        (c)   <u>Liability and Indemnification of Liquidating Agent and Oversight Committee Members</u>.  Neither the Liquidating Agent, Oversight Committee members, nor their designees,

employees, professionals, or agents will be liable for the act or omission of any other designee, employee, professional or agent, nor will the Liquidating Agent or Oversight Committee members be liable for any act or omission taken or omitted to be taken in their respective capacities, other than acts or omissions resulting from willful misconduct, gross negligence, or fraud.

      (d)    <u>Exempt Assets</u>.  The Debtor shall be entitled to retain as exempt assets and not part of the Liquidating Fund all property listed as exempt in the Schedules, including but not limited to:

      (i)    Up to $360,000.00 in equity of the Homestead Property or sale proceeds thereof;

      (ii)    $9,900 in household goods and furnishings located at 965 Summit Avenue, St. Paul;

      (iii)    Wearing apparel for Debtor and children;

      (iv)    Debtor's wedding ring;

      (v)    Debtor's watch;

      (vi)    Steinway piano to the extent allowed by law (except as provided below); and

      (vii)    Viola with case and bow (used by minor daughter) (except as provided below).

To the extent that any judgment lien impairs exempt property of the Debtor that lien is avoided under Section 522(f) of the Bankruptcy Code and other applicable law.  The liens so avoided include, without limitation, the liens described with respect to Classes 1-B, 1-C, and 1-D.

      There is case authority in Minnesota to the effect that as to musical instruments, the Minnesota Statutes which provide for exemption of musical instruments violate the Minnesota Constitution which authorize "reasonable" exemptions.  To the extent that the Liquidating Agent and the Debtor are not able to agree as to whether the assets described in (vi) and (vii) are exempt or unable to compromise that issue, the Court will determine whether these assets are exempt.  To the extent they are exempt, they will be retained by the Debtor.  To the extent they are not exempt, they shall belong to the Liquidating Agent for distribution under the Plan.

      (e)    <u>Estate Assets</u>.  As of the Effective Date, and except as otherwise provided in this Plan, the Liquidating Agent will receive in the Liquidating Fund on behalf of Creditors all Estate Assets, including but not limited to:

      (i)    Remaining cash in the estate in US Bank account # ….8681;

      (ii)    Cash in PNC account #.....2547;

(iii) Additional interest in common stock or promissory notes from Nazca Solutions, Inc. (estimated as up to $1,000,000);

(iv) Cabin property subject to mortgages and liens;

(v) Common stock in Private Bancorporation, Inc.;

(vi) Rembrandt sketch;

(vii) 1988 Mercedes convertible;

(viii) Beaver coat and raccoon coat(s);

(ix) All Avoidance Claims and Causes of Action and proceeds, including the right formerly held by GE, except as otherwise provided in this Plan;

(x) The Debtor's ownership interests in all Entities that (A) are not abandoned to him under Article V(h), and (B) include but are not limited to JLT West Side, LLC, West Side Flats, LLC, and any Entity that was not scheduled but should have been scheduled and which is property of the estate within the meaning of section 541 of the Bankruptcy Code; and

(xi) All other Estate Assets not specifically dealt with in the Plan, including any property that was not scheduled but should have been scheduled and which is property of the estate within the meaning of section 541 of the Bankruptcy Code.

(f) <u>Assets to be Abandoned</u>. As of the Effective Date, the following assets shall be abandoned to the Debtor:

(i) Causes of Action against Corsair Aviation (including ACM) and Kloeber;

(ii) Causes of Action against Sean T. Hargarth and Northern Freight Brokers, Inc.;

(iii) Causes of Action against Peter Mansour and Barry Roitblat in connection with Sproqit Technologies, Inc.;

(iv) Secured Notes from Sproqit Technologies, Inc.;

(v) Intellectual Property from Sproqit Technologies, Inc. per Exhibit C to the Schedules;

(vi) Earnings from services performed by the Debtor after the Confirmation Date (the "Debtor's Salary"); and

(vii) All potential claims against JLT Group, Inc., Lake Region Building Maintenance, Inc. or Team Parking, Inc. on account of transfers made from the Debtor prior to or after the Filing Date.

(g)   <u>Certain Personal Property to be Abandoned for a Price</u>.  The following assets shall be abandoned to the Debtor on the following terms:

(i)   Household goods and furnishings, including audio, video, and computer equipment per schedules in other than those identified above as "Exempt Assets";

(ii)   Other books, pictures and other art objects, antiques, stamps, coins, records, tapes, compact discs, and other collections or collectibles; wearing apparel; furs and jewelry; firearms; and sports, photographs and other hobby equipment per schedules, except as specifically listed in paragraph a of this section;

(iii)   Airline miles; and

(iv)   Note receivable from JLT Group, Inc.

The Debtor will make a payment to the estate in the amount of $25,000 within seventy-five (75) days after the Effective Date subject to the right of the Liquidating Agent within such period to verify the values and to decline such assets to the Debtor to sell at this price.  The abandonment to the Debtor will not occur unless and until the payment is made.  If these assets are not abandoned to the Debtor, the Liquidating Agent may liquidate them in the same manner as other assets in the Liquidating Fund.

(h)   <u>Ownership Interests in Entities to be Abandoned</u>.  The ownership interests in the Entities (collectively, the "Abandoned Ownership Interests") in the following Entities shall be abandoned to the Debtor:

(i)   331 Second Avenue, LLC  (Group A);
(ii)   JLT Roseville Corporate Center, LLC (Group A);
(iii)   3200 Como Associates, LLC (Group A);
(iv)   Bren Road, LLC (Group A);
(v)   676 Hotel, LLC (Group A);
(vi)   WCB Restaurant Company (Group A);
(vii)   JLT Group, Inc. (Group B);
(viii)   Lake Region Building Maintenance, Inc. (Group B);
(ix)   Team Parking, LLC (Group B);
(x)   JLT Mobil Building Limited Partnership (Group A);
(xi)   JLT East River Road, LLC (Group A);
(xii)   9800 Bren Property, LLC(Group A);
(xiii)   10 RPP, LLC (Group A);
(xiv)   Fillmore & State Holding Company, LLC (Group A);
(xv)   Shepard Road Acquisition Company, LLC (Group A);
(xvi)   Kennedy Building Associates, a general partnership (Group A);
(xvii)   Century & Lake Holding, L.L.C. (Group A);
(xviii)   Battle Creek Lake Acquisition Company, LLC (Group A);
(xix)   North Tamarack Associates, L.L.C. (Group A);

(xx)       River Properties of St. Paul LP (Group A);
(xxi)      Trooien & Associates LP (Group A);
(xxii)     Alexandra & Associates, L.L.C. (Group A);
(xxiii)    West Biel 15.5, LLC and West Biel 68, LLC (Group A);
(xxiv)     Jerry Realty LP (Group A);
(xxv)      The Residences at The Bridges LP (Group A);
(xxvi)     Stewart Avenue Acquisition, LLC (Group A);
(xxvii)    Jerry Realty Corporation (Group A);
(xxviii)   Midway Warehouse, LP (Group A);
(xxix)     Central Distribution, Inc. (Group A);
(xxx)      Corsair Aviation, LLC (Group A);
(xxxi)     JLT Aircraft Holding Company, LLC (Group A/Group B)*;
(xxxii)    Minnesota Choice Aviation II, LLC (Group A);
(xxxiii)   Minnesota Choice Aviation III, LLC (Group A);
(xxxiv)    Summit Aircraft, LP (Group A)**;
(xxxv)     Summit Aircraft Corporation (Group A)**;
(xxxvi)    Walker Aircraft, LLC (Group A);
(xxxvii)   Helicopter Acquisition Company No. 3 LLC (Group B);
(xxxviii)  Aircraft No. 1517 Company, LLC (Group A);
(xxxix)    Aircraft No. 1074 Company, LLC (Group A);
(xl)       Helicopter Acquisition Company No. 1, LLC (Group B);
(xli)      Helicopter Acquisition Company No. 2, LLC (Group B);
(xlii)     Aircraft No. 99 Company, LLC (Group A);
(xliii)    Hiawatha Acquisitions, LLC (Group C);
(xliv)     Midway Warehouse, Inc. (Group C);
(xlv)      Tritech .67, LLC (Group C);
(xlvi)     Tritech 1.08, LLC (Group C);
(xlvii)    North Prior, LLC (Group C);
(xlviii)   Roseville Corporate Center Corp. (Group C);
(xlix)     North Prior Corporation (Group C);
(l)        676 Bielenberg, LP (Group C);
(li)       Bielenberg Corporation (Group C);
(lii)      JLT Holding Company, Inc. (Group C);
(liii)     The Bridges Residences Corporation (Group C);
(liv)      The Bridges Realty, LLC (Group C);
(lv)       Revenue Building, LP (Group C);
(lvi)      Revenue Building Corp. (Group C);
(lvii)     Shepard Road Holding Company, LLC (Group C);
(lviii)    JLT Real Estate Company (Group C);
(lix)      Jet Choice I, LLC (Group C);
(lx)       Capital Wings Airline, Inc. (Group C);
(lxi)      ACM Aviation, LLC (Group C);
(lxii)     JC Membership Invest Company, LLC (Group C);
(lxiii)    Minnesota Choice Aviation II, LP (Group C);
(lxiv)     Minnesota Choice Aviation II, Inc. (Group C);
(lxv)      Minnesota Choice Aviation III, LP (Group C);

| (lxvi) | Minnesota Choice Aviation III, Inc. (Group C); |
| (lxvii) | Aircraft No. 149 Company, LLC (Group C); |
| (lxviii) | Aircraft No. 21 Company, LLC (Group C); |
| (lxix) | Aircraft No. 23 Company, LLC (Group C); and |
| (lxx) | Aircraft No. 600 Company, LLC (Group C). |

\*        JLT Aircraft Holding Company, LLC is a Group B entity to the extent of its claims against American Eurocopter, but otherwise is a Group A entity.

\*\*        Summit Aircraft, LP and Summit Aircraft Corporation's direct or indirect interests in the following entities are not part of Group A: Helicopter Acquisition Company No. 1, LLC, Helicopter Acquisition Company No. 2, LLC and Helicopter Acquisition Company No. 3, LLC.

In exchange for the Abandoned Ownership Interests, the Debtor will make payments to the Liquidating Agent on the following terms:

1.        <u>Cash Payments</u>.    For all abandoned Entities, the Debtor will by the seventy-fifth (75th) day after the Effective Date either pay (a) $325,000 in a lump sum payment or (b) commence making 12 monthly payments of $40,000 for the abandoned equity interests in the various entities.   Past due payments will accrue interest at the rate of 12% per annum and have priority over any distributions or payments from a Specified Entity or Group C Entity to the Debtor or an affiliate, and such payment obligations will be secured by a security interest in the Specified Entities, but otherwise such payment obligations will be non-recourse.

2.        <u>Net Distributions</u>.   The Liquidating Agent will receive 50% of the Net Distributions to which the Debtor is entitled from a Specified Entity at the same time Debtor receives his share of such Net Distribution from such Specified Entity; provided that, in the event the Debtor elects to make the $325,000 lump sum payment set forth in term 1 above, 50% of the Debtor's share of a Net Distribution shall be paid as an additional payment to the Liquidating Agent until the total of such additional payments equals $75,000.

3.        <u>Equity Value after Five Years</u>.   If a Specified Entity or its tangible property has not been sold or disposed of prior to 5 years after the Effective Date, the Liquidating Agent will be entitled to receive cash equal to 50% of the Debtor's Equity Value in the Specified Entity (as described in more detail in term 11 below) together with any portion of the $75,000 additional payment (described in term 2 above) then remaining unpaid.

4.        <u>Specified Entities</u>.   The "Specified Entities" subject to the preceding terms 2 and 3 (together, the "Sharing Agreement") are the Entities designated as "Group A" Entities in this section (h), <u>provided</u> that in each case the Specified Entities will not include the Group B Entities, the Group C Entities, or the Estate Retained Shell Entities for Tax Purposes.

5. <u>Group B Entities</u>. The "Group B" Entities to be abandoned to Debtor but not subject to the Sharing Agreement and instead retained 100% by Debtor, and will not be Specified Entities are:

      a. The three service entities of JLT Group, Inc., Lake Region Building Maintenance, Inc., and Team Parking, LLC, as well as the parent company of the first two, JLT Holding Company, Inc., and

      b. The aviation entities that may have a claim against American Eurocopter, designated as "Group B" in this section (h).

6. <u>Group C Entities</u>. The "Group C Entities" to be abandoned to Debtor are the Entities designated as "Group C" in this section (h). Net Distributions and Equity Value of Group C Entities shall be paid to the Liquidating Agent upon the same terms applicable to Group A Entities; provided, however, that to the extent such Net Distributions or Equity Value do <u>not</u> arise from the Group C Entity's ownership interest in a Group A Entity or Group B Entity, the Liquidating Agent will be paid 100% of such Net Distributions and Equity Value. Such 100% payments will not apply to the $75,000 additional payment described in term 2 above.

7. <u>Estate Retained Shell Entities for Tax Purposes</u>. The Estate will retain and not abandon to the Debtor (and thus not be subject to the Sharing Agreement and instead retained 100% by the Estate) one or more Entities other than the Group B Entities that are shell entities that do not own any assets other than tax attributes to the extent that the Liquidating Agent and the Debtor determine are necessary to be retained by the estate for tax purposes in order for the estate to avoid paying any income taxes (the "Estate Retained Shell Entities for Tax Purposes"). The Debtor and the Liquidating Agent may further agree that some additional Specified Entities will not be abandoned to the Debtor provided that such action would not create a tax obligation for the estate. Otherwise, it is the intent to allow transfer to occur, which will also minimize the tax impact on the Debtor to the extent possible. The Liquidating Agent and the Debtor will cooperate to achieve these goals and all ownership interests shall be abandoned or not within thirty (30) days after the Effective Date unless the Debtor and the Liquidating Agent agree to extend such date or unless the Court, upon motion of the Liquidating Agent for cause, extends such date.

8. <u>Net Distributions</u>. "Net Distributions" are any cash or property distributions to which the Debtor is entitled from any Specified Entity or Group C Entity (whether the source is from cash or other assets currently owned by the Entity, real estate tax refunds, operations, sale, refinancing or other sources) net of:

      a. Out-of-pocket costs, if any, incurred by Debtor in connection with the Specified Entity not reimbursed by the Specified Entity, and

      b. Any taxes, if any, payable by Debtor in connection with the Specified Entity that are not sheltered by Debtor's tax attributes.

There shall be Net Distributions of all available cash on a quarterly basis less only a reserve for budgeted capital expenditures and operating expenses (such budgeted capital expenditures to be prepared annually by the Specified Entity and approved by the Liquidating Agent).

9. _Equity Value_. "Equity Value" is the fair value (without any discounts), if any, of the Debtor's equity interests in a Specified Entity or Group C Entity, as determined by mutual agreement, or failing to reach agreement, by appraisal (with a single mutual appraiser if so agreed, otherwise with one appraiser appointed by each and a third appointed by the other two, and the appraised value shall be the average of the two closest appraisals).

10. _Pledge_. The Debtor's obligations to the Liquidating Agent will be secured by a first priority perfected security interest in 100% of Debtor's equity interests in each Specified Entity and Group C Entity.

11. _Payment of Equity Value_. As contemplated by term 4 above, after five (5) years (or earlier if mutually agreed by the Debtor and the Liquidating Agent) the Debtor will pay the Liquidating Agent 50% of Debtor's Equity Value in a Specified Entity that has not been previously sold or disposed of pursuant to a sale or other transaction (subject to term 14 to the extent applicable), and upon such payment, the Liquidating Agent's rights to such Specified Entity will stop (subject to a possible Subsequent Sale Additional Payment, if any, as described in term 12 below). However, if the Debtor does not pay to the Liquidating Agent 50% of the Debtor's Equity Value in a Specified Entity by 6 years, the Liquidating Agent as its sole remedy can sell such Specified Entity's property or the Debtor's interest in the Specified Entity, in which case the Liquidating Agent will pay over to the Debtor 50% of any proceeds realized by the Liquidating Agent from sale net of costs and taxes payable in connection therewith.

12. _Subsequent Sales Additional Payment_. With respect to all Specified Entities for which the Debtor pays the Liquidating Agent the Equity Value thereof as contemplated by term 11 above, if within the 2 years after such payment Debtor sells one or more such Specified Entities or such Specific Entities' property for more than 125% of the Equity Value used to pay Liquidating Agent (i.e., at a gain), then Debtor shall pay Liquidating Agent 50% of such additional amount which is more than 112.5% of such Equity Value, provided that if during such 2 year period Debtor sells one or more such Specified Entities for less than the Equity Value used to pay the Liquidating Agent (i.e., at a loss), Debtor may offset such losses against any such gains, provided that such losses and gains may be determined on a tax-effected basis if so agreed in the definitive documentation referenced below (the net amount payable under this term 12, if any, "Subsequent Sales Additional Payment").

13. _Dilution/Loans_. It is acknowledged that the Sharing Agreement is based on Debtor's ownership interest in the Specified Entities, and accordingly:

        a. If a Specified Entity issues equity with the Liquidating Agent's consent, the Debtor's ownership share would be diluted and,

accordingly, the 50% portion payable to the Liquidating Agent as set forth above.

b.  If a Specified Entity borrows money with the Liquidating Agent's consent, the lender will have a right to be repaid according to terms before determination of Net Distributions and Equity Value.

14.  <u>Required Consent</u>.  The consent of the Liquidating Agent, which consent shall not be unreasonably withheld, is required with respect to the following:

a.  Sale, exchange, pledge or other transfer of a part of the property of a Specified Entity or of the Debtor's interests in a Specified Entity, provided that

    i.  a Specified Entity may dispose of up to $25,000 of personal property per year without such consent,

    ii.  if in the Debtor's reasonable judgment it no longer makes economic sense to continue to operate a Specified Entity, the Debtor may surrender a Specified Entity or its property without such consent, and

    iii.  with respect to any proposed sale of the Debtor's interest in a Specified Entity, the Liquidating Agent may condition such consent on the ability to tag along in such sale on a pro rata basis and on the same basic terms and conditions applicable to Debtor's proposed sale of such interest;

b.  Issuance of new equity or debt convertible into equity in a Specified Entity, provided that Liquidating Agent may withhold its consent in its sole discretion with respect to any preferred equity that has a preferred rate of return or liquidation preference to any amounts payable to the Liquidating Agent hereunder;

c.  Borrowing of money by a Specified Entity, other than the obtaining of credit in the ordinary course of business for working capital purposes;

d.  Amendment or restructuring of the debt of a Specified Entity which has the affect of increasing the debt above existing debt and related costs;

e.  Refinance of the debt of a Specified Entity which has the affect of increasing the debt above the debt and related costs of the Specified Entity;

f.  Expenditure of cash of a Specified Entity in excess of the total of expenditures set forth in an annual budget approved by the Liquidating Agent;

g.  Lending or other use of cash or any other asset of one Specified Entity for the benefit of any other entity;

h.  Entering into leases or other contracts that are at less than market rate or that involve deferred payments of rent (other than pursuant to leasing guidelines approved by the Liquidating Agent);

i.  Payment of management fees to entities affiliated with the Debtor which are not within the approved budget; and

j.  Any transaction that would be a conflict of interest.

15.  <u>Control</u>.  Except as to matters for which the consent of the Liquidating Agent is required, the Debtor will retain control over each Specified Entity but will otherwise operate the Specified Entities in the ordinary course consistent with good business practices.

16.  <u>Reporting</u>.  The Debtor will provide customary monthly reporting to the Liquidating Agent on the Specified Entities. The Liquidating Agent will also have customary information, inspection and access rights.

17.  <u>Documents</u>.  The arrangements contemplated by this section (h) will be reflected in a definitive master agreement between Debtor and the Liquidating Agent, and approved by the Creditor's Committee prior to Plan confirmation.

(i)  <u>Settlement of Avoidance Claims</u>.  As a result of the Settlement Agreement entered into with GE as of March 11, 2011 and approved by the Bankruptcy Court on March 21, 2011, which order is incorporated in this Plan, certain liens and claims asserted by GE prior to the Filing Date by reason of a "charging order" on the ownership interests of the Debtor in certain of the Entities together with claims that certain of the Entities had violated court orders issued in favor of GE, all GE liens and claims were treated as "preferences" under the Bankruptcy and were avoided under § 550 and transferred to the bankruptcy estate under § 551 of the Bankruptcy Code.  Thus, the estate holds asserted liens on many of the ownership interests that are property of the bankruptcy estate.  To the extent that any of these are among the Abandoned Ownership Interests or such interests are subsequently abandoned or otherwise transferred to the Debtor, the liens are released by this Plan.  In addition, in consideration for the promise of the Entities or the Debtor to make certain payments under Article V(h), any claims against any of the Entities for the asserted transfers are released by this Plan.

## ARTICLE VI

## <u>Distributions and Claims Administration</u>

(a)  <u>Distributions</u>.  The Liquidating Agent shall make distributions to Creditors of net income from and net proceeds of sales of Estate Assets (A) annually or (B) within forty-five (45) days of (1) obtaining $250,000 in funds readily available for distribution or (2) determining that all assets could be liquidated have been liquidated and the Liquidating Agent determines, in

consultation with the Oversight Committee, that the next distribution will be the final distribution.

(b)     <u>Method of Payment</u>.  Payments under this Plan will be made by check, mailed with first class postage pre-paid, to the holder of each claim at the address listed on its proof of claim as of the Record Date, or if no proof of claim has been filed by the date of the hearing on confirmation, to the address listed on the Schedules as of the Record Date.  Holders of claims as of the Record Date may contact the Liquidating Agent to amend their addresses.

(c)     <u>Claims Administration Responsibility</u>.

(i)     <u>Reservation of Rights to Object to Claims</u>.  Unless a claim is specifically Allowed under this Plan, or otherwise Allowed prior to or after the Effective Date, the Liquidating Agent shall have and retain any and all objections to any and all claims and motions or requests for the payment of claims, whether administrative expense, secured or unsecured, including without limitation any and all objections to the validity or amount of any and all alleged administrative expense claims, priority tax claims, liens and security interests, whether under the Bankruptcy Code, other applicable law or contract.

(ii)     <u>Filing of Objections</u>.  Unless otherwise ordered by the Court, any objections to Claims other than administrative expense claims will be filed within sixty (60) days after the Effective Date (unless such day is not a business day, in which case such deadline will be the next business day thereafter).  An objection to a claim will be deemed properly served on the claimholder if the Liquidating Agent effects service by any of the following methods: (A) in accordance with Federal Rule of Civil Procedure 4, as allowed and made applicable by Bankruptcy Rule 7004; (B) to the extent counsel for a claimholder is unknown, by first class mail, postage prepaid, on the signatory on the proof of claim or other representative identified on the proof of claim or interest or any attachment thereto or (C) by first class mail, postage prepaid, on any counsel that has appeared on the behalf of the claimholder in the Chapter 11 case.

(iii)     <u>Determination of Claims</u>.  Except as otherwise agreed by the Liquidating Agent, any claim as to which a proof of claim or motion or request for payment was timely filed in the Chapter 11 case may be determined and liquidated pursuant to (A) an order of the Court or (B) applicable non-bankruptcy law (which determination has not been stayed, reversed or amended and to which determination (or any revision, modification or amendment thereof) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending), and will be deemed in such liquidated amount and satisfied in accordance with this Plan. Nothing contained in this Plan, the Disclosure Statement, or the confirmation order will constitute or be deemed a waiver of any claim, right, interest, or Cause of Action that the estate or Liquidating Agent may have against any person in connection with or arising out of any claim or claims, including without limitation any rights under Section 157(b) of Title 28 of the United States Code.

(d)     <u>Procedures for Treating and Resolving Disputed Claims</u>.

        (i)     <u>No Distributions Pending Allowance</u>.  No payments or distributions will be made with respect to all or any portion of a disputed claim unless and until all objections to such disputed claim have been settled or withdrawn or have been determined by a Final Order, and the disputed claim has become an Allowed claim.

        (ii)    <u>Claim Estimation</u>.  The Debtor or the Liquidating Agent may request estimation or limitation of any claim that is disputed, contingent or unliquidated pursuant to Section 502(c) of the Bankruptcy Code; provided, however, that the Court will determine (A) whether such disputed claims are subject to estimation pursuant to Section 502(c) of the Bankruptcy Code and (B) the timing and procedures for such estimation proceedings, if any.

        (iii)   <u>No Distribution if Cause of Action Asserted</u>.  No payment or distribution will be made with respect to all or any portion of a claim or Allowed claim held by a claimant against whom an Avoidance Claim or a Cause of Action is asserted unless and until such Avoidance Claim or Cause of Action has been settled or withdrawn or has been determined by Final Order.

(e)     <u>Unclaimed Payments</u>.  In the event a payment is returned to the Liquidating Agent unclaimed, with no indication of the payee's forwarding address, the Liquidating Agent will hold such payment for a period of three months from the date of return.  If not claimed by the payee by the end of that period, the payment will become property of the Liquidating Agent.  In the event there are unclaimed funds and redistribution to other holders of claims in Class 2-B is impractical, the Liquidating Agent may contribute such funds to one or more pro bono organizations whose mission is the delivery of free bankruptcy legal services to those who cannot afford to pay for such services.

(f)     <u>Proofs of Claim Not Timely Filed</u>.  If proof of a claim is required under Bankruptcy Rule 3003 and is not timely filed according to the provisions of the Bankruptcy Code or applicable Final Order in the Chapter 11 case, the holder of such claim will not be treated as a creditor for purposes of distribution under this Plan and will receive no distribution under this Plan on account of such claim.

## ARTICLE VII

## <u>Retention and Enforcement of Claims or Interests Belonging to Debtor or Estate</u>

On the Effective Date, the Liquidating Agent shall be vested in and shall retain, and the Liquidating Agent may, at his option, enforce any claim or interest belonging to the estate and not specifically abandoned to the Debtor under the Plan, including Causes of Action and the Avoidance Claims, pursuant to 11 U.S.C. § 1123(b)(3)(B).  All recoveries on any of the Causes of Action and Avoidance Claims shall be retained by the Liquidating Agent for use in making payments under this Plan.  On the Effective Date, the Debtor shall be vested in and shall retain, and may, at his option, enforce any claim, interest, Causes of Action, and Avoidance Claims belonging to or abandoned to him under the Plan.

## ARTICLE VIII

### Assumption and Rejection
### of Executory Contracts and Unexpired Leases

Attached to the Plan as <u>Exhibit A</u> is a list of executory contracts and leases that shall be assumed on the Confirmation Date with proposed cure amounts, if applicable. Unless an objection is filed prior to entry of the Confirmation Order, then any such amount shown on Exhibit A as "cure" shall be conclusively determined to be the amount required to cure any monetary or non-monetary default under any assumed executory contract or lease. If an executory contract and/or lease is not shown on Exhibit A, and has not been previously dealt with by prior Court order, such contract or lease will be deemed rejected effective on the Confirmation Date. All parties to any executory contracts and leases rejected pursuant to this provision must file a proof of claim within thirty (30) days of the Confirmation Order or such other period set forth in the Confirmation Order if such Order sets a deadline for filing a proof of claim, or be forever barred from receiving any distribution under this Plan. The Debtor reserves the right to alter, amend or add to the list of executory contracts at any time prior to the Confirmation Date.

## ARTICLE IX

### Tax Matters

(a)     <u>Tax Attributes</u>. As of January 1, 2010, the first day of the Debtor's taxable year in which the case commenced, the Debtor had the following tax attributes:

- Net operating losses of $6,891,145;

- At-risk losses of $1,340,317;

- Capital loss carry-forwards of $364,694; and

- Passive loss carry-forwards of $37,255,997.

In addition, the estate may be entitled to use net operating losses ("NOL's") of any of the Entities incurred after that date and until the Effective Date.

The total of all of the above is $45,852,153, plus the NOL's and any other tax attributes accruing after January 1, 2010, if any (the "Tax Attributes"). Under Section 1398(g) of the Internal Revenue Code of 1986, as amended, the bankruptcy estate succeeds to and may take into account the Tax Attributes. For tax purposes, the Entities in which the Debtor holds ownership interests will either be treated as "disregarded entities" or "regarded entities." A disregarded entity, such as a single member limited liability company, is treated for tax purposes as if the entity did not exist and the property owned by the disregarded entity was owned directly by the equity holder. A regarded entity may either be a separate taxpaying entity, such as a C corporation, or a pass-through entity, such as a partnership or an S corporation. A pass-through entity does not itself pay tax on its income but passes through its income to its owners. Limited

liability companies are generally taxed as pass-through entities. Certain of the Tax Attributes, such as passive loss carry-forwards and at-risk losses, may be directly associated with a particular Entity. Any sale or exchange of the ownership of the property owned by the Entities or any sale or exchange of the ownership of the Entities, including any foreclosure on the property or the ownership interests, other than an abandonment, constitutes a taxable event ("Taxable Event") which will likely result in gain or loss for income tax purposes. In general, to the extent that a Taxable Event occurred before the Filing Date, the gain or loss will be allocated to the Debtor. Similarly, to the extent that a Taxable Event occurred on or after the Filing Date the gain or loss will be allocated to the bankruptcy estate. If, however, the sale or exchange occurs in an entity that is a pass-through Entity, the allocation of gain or loss may depend on the ownership of the Entity on the last day of the Entity's tax year.

Most of the properties owned by the Entities have a low tax basis so that when there is a Taxable Event, it is likely that the fair market value of the properties will exceed the basis and result in gain for income tax purposes. The total amount of gain will be significant, and could exceed all of the Tax Attributes that might be used to offset the gain. An abandonment of the entities by the bankruptcy estate does not constitute a Taxable Event. If the bankruptcy estate abandons the entities, both the ownership of the Entities and the passive loss carry-forwards and at-risk losses associated with such Entities will pass to the Debtor. Other Tax Attributes will remain with the bankruptcy estate. If a Taxable Event involving the sale or exchange of property owned by an Entity occurred on or after the Filing Date and before abandonment, but an abandonment thereafter occurs prior to the last day of the Entity's tax year, gain or loss from the Taxable Event may be allocated to the Debtor rather than the bankruptcy estate.

If there is taxable income in the bankruptcy estate exceeding the Tax Attributes that could be used to reduce such taxable income, the resulting administrative priority tax claim could exceed the value of the assets in the estate and eliminate any distribution to unsecured creditors. It is the intent of this Plan to prevent that from happening, primarily by abandoning the ownership interests in the Entities to the Debtor, leaving him to deal with the tax consequences. To the extent that a Taxable Event allocable to the bankruptcy estate has already occurred or is otherwise unavoidable, the Liquidating Agent will file the necessary tax returns and apply Tax Attributes to prevent the estate (including the Liquidating Fund or the Liquidating Agent to the extent applicable) from having taxable income. If necessary, and only to the extent necessary, to assure that there will be no taxable income to the estate, the Debtor will decline to accept Abandoned Ownership Interests in some entities so as to leave sufficient Tax Attributes in the estate for that purpose. The Liquidating Agent and the Debtor will cooperate to achieve this goal.

(b)    <u>Real Estate Tax Refunds</u>.  Any real estate tax refunds received by the entity owning the real estate will first subject to the obligations of the Entity to turn over such refund to the tenants or lenders who paid the real estate taxes which are being refunded, to apply such refunds to the Entity's obligations to its creditors, or to pay costs of operation or liquidation. To the extent after such payment refund amounts exist that are distributable on account of ownership interests, such amounts will be payable as Net Distributions according to Article V(h)7.

## ARTICLE X

## General Provisions

(a)     In the event this Plan is not confirmed under Code § 1129(a), the Debtor requests that this Plan be confirmed under Code § 1129(b).

(b)     The Debtor has no retiree benefits, as that term is defined in Section 1114 of the Bankruptcy Code.

(c)     This Plan affects no rates subject to approval by any governmental regulatory commission.

(d)     The Debtor and the Liquidating Agent will take any action and/or execute any reasonably appropriate documents as is reasonably appropriate to effectuate the intent of the Plan.  The provisions of this Plan do not in any way affect, negate or change the liability of any person or entity that guarantied to any creditors the payment of Debtor's indebtedness.

## ARTICLE XI

## Conditions Precedent

Conditions to the Effective Date.  This Plan shall not become effective unless and until each of the following conditions have been satisfied in full in accordance with the provisions specified below:

(a)     The Court will have approved by Final Order the Disclosure Statement with respect to this Plan in form and substance acceptable to the Debtor.

(b)     The Confirmation Order will be in form and substance acceptable to the Debtor.

(c)     The Confirmation Order will be a Final Order, and no request for revocation of the confirmation order under Section 1144 of the Bankruptcy Code will have been made, or if made, will remain pending.

(d)     The Debtor will have sufficient cash on hand to pay obligations required to be paid on the Effective Date of this Plan.

(e)     The Confirmation Order or other Final Order of the Court shall grant the discharge to the Debtor, consistent with this Plan.

**ARTICLE XII**

**Events of Default**

Unless otherwise provided elsewhere in this Plan, default with respect to the Debtor's obligations to the Liquidating Agent or any creditor or holder of Allowed claim under this Plan will not occur unless and until the Liquidating Agent or such creditor or holder has delivered written notice of such default to the Debtor and the Debtor has failed to cure such default within 30 days after receipt of such written notice. If the Debtor fails to cure a default, a creditor's sole remedy is a claim for breach of contract and the Liquidating Agent shall have such a claim and any other remedy provided for in the Plan or pursuant to any interests the Debtor has granted to the Liquidating Agent under the Plan.

**ARTICLE XIII**
**Effect of Confirmation**

(a)     _Discharge_.  The Debtor will bring a motion seeking a discharge to be heard contemporaneously with the hearing on Plan confirmation.  Confirmation of this Plan entitles the Debtor to a discharge effective as of the Discharge Date, which shall be the first date after (i) the Debtor has made his first payment as required in Article V(h)(1) <u>and</u> (ii) the Debtor and the Liquidating Agent file a certificate that all abandonments and other actions required to occur under Article V(h)(6) have been completed.  As provided in Article V(h)(1), the first payment will be no later than the seventy-fifth (75th) day after the Effective Date.  As provided in Article V(h)(6), abandonments and other actions will take place within thirty (30) days after the Effective Date unless the Debtor and the Liquidating Agent agree to extend such date or unless the Court, upon motion of the Liquidating Agent for cause, extends such date.  Upon the occurrence of the Discharge Date, the Court shall enter an order of discharge.  For the period from the Confirmation Date to the Discharge Date the automatic stay of 11 U.S.C. § 362 shall remain in effect.  The discharge entitles the Debtor to the full benefit of Section 1141 of the Bankruptcy Code and discharges, waives and releases Debtor from any debt that arose before the Confirmation Date and any debt of a kind specified in Code §§ 502(g), 502(h) or 502(i), regardless of whether or not proof of the claim based on such debt was filed or deemed filed under Code § 501, such claim is allowed under Code § 502, or the holder of such claim has accepted the Plan.  The payments of, distributions on account of, or treatments of claims in this Plan are deemed to satisfy in full all claims.  All property of the Debtor and the estate is dealt with by this Plan; therefore, on the Effective Date, all Assets and other property of the Debtor and the estate vest in the Liquidating Agent or the Debtor as provided in the Plan and such property is free and clear of all liens, encumbrances, claims and interests of creditors and equity security holders, except to the extent the Plan explicitly provides that such liens, encumbrances, claims or interests are retained.

(b)     _Discharge Injunctions_.  As of the Confirmation Date and subject to its occurrence, all persons that have held, currently hold or may have asserted a claim or other debt, liability, interest or other right that is discharged, released or terminated pursuant to the Plan, are hereby permanently enjoined from commencing or continuing, in any manner or in any place, any action or other proceeding, enforcing, collecting or recovering in any manner any judgment, award,

decree or order, creating, perfecting or enforcing any lien or encumbrance, asserting a set-off, right or subrogation or recoupment of any kind against any debt, liability or obligation due to any such releasing person, and from commencing or continuing any action, in any manner or in any place where the foregoing does not comply with or is inconsistent with the provisions hereof.

## ARTICLE XIV

### Modification of Plan

The Debtor may amend or modify this Plan in the manner provided for under Code § 1127(a) or (b).  The Debtor will give notice of any proposed modification to the United States Trustee and to any other parties designated by the Court.  The Debtor also reserves the right to make such modifications at any hearings on confirmation as are necessary to permit this Plan to be confirmed under Code § 1129(b).

## ARTICLE XV

### Continuing Jurisdiction

The Court will retain jurisdiction for the following purposes: classification of the claims of creditors and allowance of the claims of creditors; allowance of claims for damages from the rejection of executory contracts; determination of all questions and disputes regarding title to the Assets of the Liquidating Agent and determination of all causes of actions between the Debtor, the Liquidating Agent and any other party, including but not limited to any claim, interest, or objection retained under Articles V or VI of this Plan; correction of any defect; the curing of any omission or the reconciliation of any inconsistency in this Plan or the order of confirmation as may be necessary to carry out the purpose and intent of this Plan, on notice or ex parte, as the Court will determine to be appropriate; interpretation and enforcement of the terms of this Plan; shortening or extending, for cause, of time fixed for doing any act or thing under this Plan, on notice or ex parte, as the Court will determine to be appropriate; entry of any order, including any injunction, necessary to enforce the title, rights, and powers of the Liquidating Agent; and entry of an order concluding and terminating this case and for all other purposes related to this Plan or this case to the full extent permitted by the Bankruptcy Code and all other applicable federal law.  The Court may exercise its jurisdiction after notice and a hearing or ex parte, as the Court determines to be appropriate.

*[Remainder of page intentionally left blank.]*

IN WITNESS WHEREOF, the undersigned has executed this Debtor's Amended Plan of Liquidation as of the date set forth above.

By _____
Gerald Trooien

James L. Baillie (#3980)
Douglas W. Kassebaum (#386802)
Cynthia A. Moyer (#211229)
Sarah M. Gibbs (#0390238)
**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, #4000
Minneapolis, MN 55402
Telephone: (612) 492-7292
Facsimile: (612) 492-7070
jbaillie@fredlaw.com
dkassebaum@fredlaw.com

ATTORNEYS FOR DEBTOR

4820703

# Exhibit A

## Executory Contracts

| Counterparty | Description | Cure Amount | Assume / Reject |
|---|---|---|---|
| Abbott, Emily | Month to month rent of carriage house located at Debtor's St. Paul residence. | $0.00 | Assume |
| EdinAlarm | Residential Security and Fire Protection (alarm) for St. Paul residence. | $0.00 | Assume |
| Hays Companies | Chartis Private Client Group Insurance Policy - Homeowners & watercraft | $0.00 | Assume |
| Hays Companies | Chartis Private Client Group Insurance Policy - Special Collections Policy | $0.00 | Reject |
| Hays Companies | Chartis Private Client Group Insurance Policy - Auto policy | $0.00 | Assume |
| Hays Companies | Chartis Private Client Group Insurance Policy - Umbrella Policy | $0.00 | Assume |
| Lifetime Fitness | Month to month Gym membership | $0.00 | Assume |
| People's Security | Cabin security/alarm | $0.00 | Reject |
| Southview Country Club | Country club membership | $0.00 | Reject |